MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. CAPITAL COMPRESS COMPANY.

Decided May 6, 1908.

**Carrier—Demurrage—Cotton Compress—Privity of Contract.**

On the arrival at a town in which a compress was situated of cotton consigned to various dealers, it was customary for the railway company to notify the compress company thereof, which, in turn, when ready to receive it, notified the carrier what cars were to be switched to its platforms for that purpose. There the compress company unloaded it and the consignees weighed, classified and marked it; it was then compressed and the compress company, as agent of the owners, reloaded it and collected from the carrier the charges for compressing. Held, that the compress company stood in no privity to the contract of shipment with the carrier and was not liable to it for demurrage on the cars while they waited on the carrier's side tracks between the time the latter notified the compress of their arrival and it notified the carrier of its readiness to receive and unload them.

Appeal from the District Court of Travis County. Tried below before Hon. V. L. Brooks.

*Fiset & McClendon,* for appellant.—The evidence showed that the compress, under a general custom of long standing, as between it and the railroad, dealt with concentration cotton as its own property; that it signed for it, ordered it to and from the compress, compressed it, and collected from the railroad the compression charges, and looked to the railroad alone for such charges. These facts constituted the compress, as between it and the railroad, the real consignee of the cotton; and at all events rendered the compress liable for demurrage, caused by its failure to order the cotton into the compress within the "free time" limit.

The custom and regulation whereby the compress signed for the cotton and assumed the duty of ordering the cotton to the compress, and of determining and ordering what cotton should be moved and what not, was an arrangement, voluntarily entered into by the compress for its own benefit, namely, in order that it might get the cotton

for compression and collect the charges for compression from the railroad, and the compress thereby itself assumed the duty and obligated to the railroad to have the cotton moved and the cars released within the "free time" limit. Any failure on the part of the compress to perform this duty, either by reason of its inadequate facilities for storing the cotton or otherwise, rendered the compress liable to the railroad for the demurrage.

Even considering the compress as the agent of the consignee, it is a well established rule that an agent, by his conduct, may show an intention to bind himself, and not his principal, and the course of dealing here shown to have existed evidenced an intention on the part of all the parties that the compress was assuming for itself the duty of looking after the cotton when it had accepted notice of its arrival. For failure to perform which duty it became liable to the railroad.

*D. W. Doom* and *D. H. Doom,* for appellee.—The District Court correctly decided in its conclusion of law No. 1 that no contractual relation existed between plaintiff and defendant with reference to the shipment of said cotton, and that the plaintiff did not owe the demurrage which accrued in defendant's favor on said cotton under the contract for its transportation, if any such demurrage accrued. Rev. Stats. 1895, art. 4562, subd. 10; Houston E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551; Hunt v. Missouri, K. & T. Ry. Co., 31 S. W., 523.

KEY, Associate Justice.—The nature and result of this suit, as well as the reasons for that result, will be found in the trial judge's conclusions of fact and law, which are as follows:

"In this case the plaintiff, Capitol Compress Company, sued the defendant, Missouri, Kansas & Texas Railway Company of· Texas, to recover of it the contract price for compressing certain cotton. The defendant admits that it owed to the plaintiff the amount sued for, but pleads in offset that the plaintiff is due it a certain sum as demurrage for holding overtime the freight cars in which the cotton to be compressed was delivered to plaintiff; and pleads further that it has paid to plaintiff, since the institution of this suit, the difference between the sum claimed to be due to it as such demurrage and the sum due by it as such contract price for compressing said cotton. The plaintiff by supplemental pleadings admits the making of this payment. After a trial on the facts without a jury judgment was rendered disallowing the offset pleaded by defendant and awarding to plaintiff a recovery for the amount originally sued for by it less said payment. At the request of the parties I have prepared and caused to be filed the following findings of fact and conclusions of law, on which said judgment is predicated, viz.:

"*Findings of Fact.*—The sole issue between the parties is whether or not the plaintiff owes to the defendant the demurrage which the latter claims in its answer, and the findings will be confined to what are thought to be the material facts bearing on that issue.

"1. The plaintiff is a private corporation organized for the purpose of compressing cotton. It owns and operates and owned and operated during the months of October and November, 1906, adjacent to the

defendant's freight depot and yards in the city of Austin, Texas, a compress known as the East Avenue Compress. This compress consists of a house with the necessary assemblage of machinery for compressing cotton, a large platform used for the purpose of temporarily storing unloaded cotton, and two side or spur railway tracks extending along two sides of said platform and communicating with the tracks and switches in the yards of defendant in said city.

"2. The defendant is a common carrier of freight for hire, and was such common carrier during said two months of the year 1906.

"3. During the months of October and November, 1906, there came into the city of Austin, Texas, over the defendant's line of railroad as freight, certain cotton, the demurrage on which is the subject matter of this litigation. The cotton was, under the rules and regulations of the Railroad Commission of Texas and the custom obtaining with reference thereto, known as 'concentration cotton.' It was carried into Austin under local bills of lading, and all thereof, except one shipment, was consigned by the shippers to various individuals residing in said city and pursuing the occupation of cotton buyers. The particular shipment excepted from the last statement was consigned to plaintiff by mistake—the shipper really intending to consign it to a firm of cotton buyers in Austin under the firm name of D. T. Iglehart & Company. The plaintiff never authorized the shippers of said cotton to consign same or any part thereof to it, and never accepted any part of same as the consignee thereof. These shipments of cotton are correctly described and identified in the tabulated statement attached as an exhibit to defendant's first original answer, and said exhibit is by this reference made a part of these findings.

"4. Upon the arrival in defendant's yards in the city of Austin of each of said consignments of cotton, the cars containing same were placed on defendant's side tracks and plaintiff was notified in writing by defendant of the arrival of such shipment. According to a course of dealing and custom obtaining with reference to such shipments of concentration cotton between plaintiff, defendant, and the various consignees thereof, the cars containing each of said shipments were transferred by defendant's yardmaster from defendant's tracks to the switches or sidings adjacent to plaintiff's compress and platform. The cotton was after said transfer unloaded by plaintiff's agents upon plaintiff's platform. After the unloading of said cotton, and while it was still uncompressed and upon said platform, the various consignees thereof weighed, classified and marked same. After the weighing, classifying and marking of said cotton by its consignees, the plaintiff compressed same by authority of said consignees and loaded it into other cars situated on said sidings adjacent to its compress. Plaintiff had no authority from the consignees of said cotton to compress same, or to in any manner load same for shipment out of Austin, until said consignees had weighed, marked, and classified it, and informed plaintiff of the point of its ultimate destination.

"5. It was the duty of defendant's yardmaster under said custom to remove all empty cars from the sidings adjacent to plaintiff's compress and to remove therefrom all cars loaded with compressed cotton consigned to points out of Austin.

"6.  During the months of October and November, 1906, the movement of cotton upon all railroads in Texas was unusually heavy, and a freight blockade was in part created thereby in defendant's yards in Austin.  Said blockade was caused by said unusual movement of cotton into said yards and the delay in moving it out after its arrival. The delay in moving the cotton out was caused by lack of cars in which to reship it, by lack of switching facilities in said yards, and by the action of the consignees of said cotton in refusing to authorize plaintiff to compress it and load it for reshipment out of Austin until they had done the necessary weighing, classifying and marking.

"7.   Plaintiff directed defendant's yardmaster to place the respective cars containing said cotton on the sidings adjacent to its compress as soon after it received notice of the arrival of said cars in defendant's yards as practicable.  Whatever delay intervened between the receipt of said notice by plaintiff and the ordering in by it of said cars upon said sidings was occasioned (a) by the time necessarily consumed in unloading upon said compress platform prior shipments of cotton; (b) by the time consumed by the consignees of such prior shipments in weighing, classifying and marking the cotton composing same, and (c) by the time necessarily consumed in reloading the cotton composing such prior shipments after it was compressed and ready for reshipment.

"8.  During said months no car containing any of said cotton stood unloaded on the sidings adjacent to plaintiff's compress for a longer period than five or six hours.

"9.   The various rules and regulations of the Railroad Commission of Texas and the constructions thereof pleaded by the respective parties were introduced in evidence and will be found in the statement of facts.   The writer has not access to this evidence while these findings are being written, and respectfully refers to same as they appear in the statement of facts in preference to attempting to state same from memory.

"10.   If 'free time' began to run against said shipments of cotton from their respective arrivals in defendant's yards and the giving of notice of such arrival to plaintiff, the demurrage claimed by defendant is due it by someone.  But if such 'free time' only began to run from the placing of the cars containing said cotton on the sidings adjacent to plaintiff's compress, neither the plaintiff nor anyone else owes said demurrage.

"*Conclusions of Law.*—1.  No contractual relations existed between plaintiff and defendant with reference to the shipment of said cotton and the plaintiff does not owe the demurrage which accrued in defendant's favor on said cotton under the contract for its transportation, if any such demurrage accrued.

"2.   Under the facts no such demurrage accrued in defendant's favor.

"V. L. Brooks,
"Judge 26th Judicial District of Texas."

*Opinion.*—The railway company has appealed and presented the

case in this court upon several assignments of error, which we deem it unnecessary to state in detail and consider separately. The assignments do not assail the trial court's findings of fact; and the contention is that, under the facts found, appellant was entitled to demurrage and appellee was liable therefor. The trial court ruled against both of these contentions, and if either ruling was correct the judgment must stand.

We sustain the holding that appellee was not liable to appellant for the demurrage sought to be recovered. The findings of fact fail to show any contractual relation between them in reference to the shipment of the cotton, and for that reason appellee was not liable for the demurrage sought to be recovered. Appellee was engaged in the business of compressing cotton. The cotton in question did not belong, and was not consigned, to it, but to other persons. Appellee compressed the cotton, and, acting as agent for the owners, delivered it to appellant for transportation and collected from it the charges for compression. We think the trial court ruled correctly when it held, on the facts referred to, that appellee was not liable for demurrage, if any had accrued. This ruling results in an affirmance, and renders it unnecessary to pass upon the other question decided by the trial court.

No reversible error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.