New York Central Railroad Company, Plaintiff, *v.* W. A. Sharp, Defendant.

Supreme Court, Erie County, December 1, 1924.

**Carriers — bills of lading — action by delivering carrier to recover balance of freight charges on merchandise shipped to defendant as " notify party " in straight bill of lading — defendant, acting as agent of shipper, neither accepted delivery of merchandise to himself nor promised to pay freight charges — plaintiff not estopped by mistake in collection of freight charges — defendant not liable by reason of implied promise to pay — complaint dismissed.**

In an action by a delivering carrier to recover the balance of freight charges on merchandise shipped to the defendant as a " notify party " in a straight bill of lading the complaint should be dismissed, where it appears that the defendant acted as agent of the shipper and did not own the merchandise and neither accepted delivery of the goods to himself nor promised to pay any part of the freight charges.

The plaintiff is not estopped by the fact that it or one of its connecting carriers, through a mistake, collected less than the published freight charges.

Moreover, defendant is not liable by reason of any implied contract to pay, where his only dominion over the merchandise was to direct the carrier as to whom delivery should be made " on payment of freight and all other charges."

Action by the plaintiff against an agent of a shipper to recover freight charges.

*Rann, Vaughan, Brown & Sturtevant* [*Mark N. Turner* of counsel], for the plaintiff.

*Van Arsdale, Hofheins & Vandermeulen* [*Walter Hofheins* of counsel], for the defendant.

Crosby, J.:

This case is submitted upon a stipulated set of facts, the essentials of which are as follows: That a certain shipper, called the Rio Grande Growers' Exchange, shipped a carload of tomatoes from Mercedes, Tex., to itself at Buffalo, and that the initial carrier issued what is known as a straight bill of lading (as distinguished from an order bill of lading); and that upon the bill of lading appeared a direction to " Notify W. A. Sharp " (the defendant); that the plaintiff was the final and delivering carrier; that it notified defendant, and that defendant gave plaintiff a written order, signed, " W. A. Sharp," to deliver the contents of the car to A. & G. Produce Company, " on payment of freight and all other charges; " that plaintiff honored said order, but, owing to an error on the part of either the plaintiff or one of its connecting carriers,

collected freight charges sixty-one dollars and eighty cents less than the correct amount as per published rates.

It is further stipulated that defendant never owned the shipment, was only an agent of the shipper, acting as commission merchant, and that he received only twenty dollars commission for his part in the transaction; but that, prior to releasing the freight, plaintiff had no knowledge of the nature of defendant's interest in the freight, except such as it had or might gather from the terms of the " notify " clause in the bill of lading.

Upon this state of facts the plaintiff claims the right to recover sixty-one dollars and eighty cents from the defendant.

To begin with, the plaintiff is not estopped by the fact that it made a mistake, the correction of which would work a hardship on an innocent party. By act of Congress (Interstate Commerce Act [24 U. S. Stat. at Large, 379, chap. 104], as amd.) a sincere and successful attempt has been made to end discrimination in freight rates; and no agreement between shippers and carriers, and no mistake or negligence on the part of carriers, either in representing its rates or in collecting its freight charges, can defeat its right, and indeed its duty, to collect the published rate from one owing the duty to pay. Moreover, the right of the carrier to collect the freight, according to the published rates, had been established as against a variety of persons, including shippers, consignees, owners, and even mere agents of shippers, where the goods were consigned to the agent as such. And it has been held that one who undertakes to pay freight charges, for any reason, and, owing to a mistake, pays too little, can be called upon for the balance.

Let us look at some of these cases:

*Pennsylvania R. Co.* v. *Titus* (216 N. Y. 17) is a case in which the consignee was a mere commission merchant, but the bill of lading did not, by its terms, disclose his character as agent. Defendant received the goods from the plaintiff and paid all the freight charges demanded. He afterwards resisted a demand for the small amount representing the balance of the correct freight charge. The mistake in collecting less than the proper charge was the mistake of the plaintiff. Defendant was held liable to pay the balance. This decision can be accounted for on either one of two theories: that, as consignee, the defendant was presumptive owner; or that, having undertaken, for any reason, to pay the freight, defendant owed the duty and was assumed to have agreed to pay the correct amount.

Vide, also, *Central R. Co. of New Jersey* v. *Mauser* (49 L. R. A. [N. S.] 92) where, in the footnote, are collected the cases in which shippers, as well as consignees, are held liable. There has never

been any doubt of the obligation of the shipper in this regard, but the obligation of the consignee has now more recently been firmly established. (*New York Cent. R. R. Co.* v. *Ross Lumber Co.*, 234 N. Y. 261. See, also, *New York Cent. R. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182.)

The case of *Great Northern Ry. Co.* v. *Hyder* ([D. C.] 279 Fed. 783) holds that a consignee is liable for the freight charges, though only a commission merchant, who never owned the property; and suggests, as a theory for holding the consignee, that he is the party who, by accepting delivery of the goods, has caused the carrier to lose its lien for freight charges.

The case of *Western & A. R. Co.* v. *Underwood* ([D. C.] 281 Fed. 891) goes to the extreme limit of logic in order to hold a consignee liable for freight charges. In that case the consignee (defendant) was a mere commission merchant and agent for the shipper; and, moreover, his character as a mere agent was disclosed by the terms of the bill of lading issued by the carrier. The shipment was made to "J. R. Underwood, Agent." The equities in favor of the defendant were still further enhanced by the fact that the shipper had prepaid the freight and the bill of lading so recited. When the shipment was ready for delivery to the defendant, it was discovered that, through mistake of the carrier's shipping agent, the full freight had not been paid and the balance was demanded of the defendant. He disclaimed liability, but consented to pay the small balance, provided he was assured that " it was all." Being assured on that point, he paid the balance and thereafter was required by the judgment of the court to pay a still further substantial sum, when it was discovered that the carrier had not succeeded in correcting all its mistakes. A study of this case ought perhaps to discourage resistance to demands for freight charges made against any one who has had the remotest connection with the goods or the shipment thereof. (Vide, also, *Pittsburgh, C., C. & St. L. R. Co.* v. *Fink*, 250 U. S. 577.)

The case of *New York Cent. & H. R. R. R. Co.* v. *York & Whitney Co.* (256 U. S. 406) is the case principally relied upon in plaintiff's brief to carry the rule of liability far enough to reach the defendant in the case at bar. This case was tried in the State of Massachusetts and is reported in 230 Massachusetts, 206. As to one of plaintiff's causes of action, the court found a judgment for the defendant upon receiving from the jury an answer of " no " to the following question: " Did or did not the defendant impliedly agree with the plaintiff to pay the balance of freight and transportation charges, as set forth in the first item of the account annexed to the declaration? "

The judgment is reversed in 256 United States, 406, on the ground that defendant was liable as a matter of law because the defendant was the consignee of the goods and undertook to pay the freight charges, notwithstanding that defendant disclosed to the carrier that the defendant was only a commission merchant, did not own the goods, and would pay the freight charges only upon the assurance that the charge demanded by plaintiff was all that would ever be demanded. The situation in this case is quite similar to that in *Western & A. R. Co.* v. *Underwood* (*supra*). And the holding is the same.

Scores of other cases have been studied and might be here cited, but enough have been herein reviewed to show the lengths to which the courts have gone to effect the purpose of the statute prohibiting discrimination in freight rates. Liability for freight charges of the following persons has been established: (1) A consignor (of course); (2) a consignee, regardless of whether or not he is actual owner, and regardless of whether or not his character as agent is disclosed by the bill of lading or is communicated to the carrier, provided he accepts the shipment; (3) any other person who, for any reason, undertakes to pay the freight charges (by paying the part demanded) and thereby induces the carrier to deliver the goods and release the lien (depending upon possession) which the carrier has for freight charges; (4) an owner.

But in the case at bar the defendant cannot be placed within any of these classifications. He can best be described as a person who, for a consideration, paid or promised to him by the consignor, undertakes to tell the carrier to whom the consignor wishes the carrier to deliver the goods. He is not the consignor; he is neither the consignee, as a matter of fact, nor the consignee named in the bill of lading; he is not and never was the owner of the goods; he never accepted delivery of the goods to himself; he never paid any of the freight charge nor promised to pay it; he never did a thing to cause plaintiff to release its lien for freight charges.

In assuming to direct the carrier to whom to deliver the goods, did defendant exercise such dominion over the goods that he has obligated himself to pay freight charges? Such obligation, if it exists, must be based either upon a mandate of the statute or upon a contract, express or implied. The statute does not fasten liability upon him. He has made no express contract to pay. What about the implied contract? It is easy to spell out the contract to pay that is entered into by (1) the consignor, who initiates the shipment, (2) the consignee, who is the implied owner, (3) real owner, and (4) any person who accepts delivery of the goods, or, for any reason, pays a portion of the freight charge;

for a person who accepts the goods is an implied owner, and one who undertakes to pay the freight, and pays a portion thereof, must be presumed to have undertaken to pay the amount required by law; and, moreover, any person who either accepts the goods himself, or by paying a portion (the portion demanded) of the freight charges induces the carrier to deliver the goods to others, has induced the carrier to release its lien for carrying charges and must be deemed to have undertaken to make good the amount of that lien.

But it is difficult to see how any implied promise to pay can be visited upon this defendant who, in effect, merely said to plaintiff: " My principal wishes me to say to you that he, acting by and through me as his agent, has sold these goods to the A. & G. Produce Co., and my principal, therefore, asks me to direct you to deliver the goods to the A. & G. Produce Company after collecting the freight charges from the latter."

The courts have not yet gone so far as to hold such a one liable for freight charges. No settled principle of law, and no expedient of public policy, requires us to go as far.

The defendant may have judgment dismissing the complaint. Findings may be prepared accordingly.