SOUTHWEST INDUSTRIES INVEST-
MENT COMPANY, Appellant,

v.

The GREENE HOME OWNERS
ASSOCIATION, INC., Appellee.

No. 20454.

Court of Civil Appeals of Texas,
Dallas.

Oct. 28, 1980.

Rehearing Denied Dec. 4, 1980.

Timothy Kline, Drew Neville, Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., David Fagg, Dallas, for appellant.

Randy A. Nelson, Thompson, Coe, Cousins & Irons, Dallas, for appellee.

Before AKIN, CARVER and STOREY, JJ.

CARVER, Justice.

The trial court granted summary judgment in favor of The Greene Home Owners Association, Inc., and against Southwest Industries Investment Company for (1) unpaid monthly lot–owner assessments, together with accrued interest and attorney's fees and (2) the restoration costs for damages to the common property of all lot–owners occasioned by Southwest's construction activity relative to its own lots. The summary judgment also denied Southwest's counterclaim for theft and vandalism said to have been occasioned by the Association's failure to accomplish its purpose of promoting the safety of lot–owners, and for loss of sales by Southwest, claimed to have been occasioned by the Association's failure to properly maintain the common property. We reverse and remand the summary judgment as to the Association's cause of action for unpaid monthly installments of annual lot–owner assessments, together with interest and attorney's fees, because the summary judgment record fails to establish that Southwest was the "record–owner of the fee simple title" to the lots in question for the months in question so as to be liable for the assessments. We affirm the summary judgment as to the Association's cause of action for the restoration costs to common property occasioned by Southwest's con-struction activity because Southwest had agreed in writing to make the restoration and did not contest in the summary judgment proceedings that it had failed to do so or that the reasonable and necessary cost of restoration was $733.00 as of May 24, 1979. We affirm the summary judgment denying Southwest's counterclaim because the "Declaration of Covenants and Restrictions" relied upon by Southwest does not, as a matter of law, disclose any duty undertaken by the Association to prevent theft or vandalism upon Southwest's lots or to assure sales of Southwest's improved lots.

In January 1972, Glen Oaks, Inc. executed and filed a "Declaration of Covenants and Restrictions" controlling the development of 47.825 acres it owned in Duncanville, Texas, into a residential community to be known as "The Greene." The Declarations provided extensive restrictions requiring the development of the property into (1) lots to be owned and improved by their owners and (2) into "common property" to be owned and improved by all lot owners together in the Association and funded by annual assessments. The "owner" of each lot and a "member" of the Association was defined in the Declaration, Article I, Section 1(e) as follows:

"Owner" and/or "Member" shall mean and refer to the *record owner*, whether one or more persons or entities, *of the fee simple title* to any lot situated upon the Properties, but, notwithstanding any applicable theory of the mortgage, shall not mean or refer to the mortgagee unless and until such mortgagee has acquired title pursuant to foreclosure or any proceeding in lieu of foreclosure. [Emphasis added.]

The Declarations provided for annual assessments for maintenance of existing common property, and for special assessments for adding further capital improvements to the common property. Both assessments were the personal obligation of the owner but were secured in their amount, plus interest, collection costs, and attorney's fees, by a lien on the assessed lots. The record reflects that Southwest had originally ac-

quired thirty–one lots (although lot numbers were not shown) to be improved and sold. In August 1977, Southwest wrote a letter to the Association undertaking that "Southwest Industries will restore all landscaping to its original state, after the moving of our construction office."

The present controversy between the parties arose in May, 1979, when all of Southwest's construction was completed. The Association, by letter, itemized the restoration needed to the common property, and the cost thereof, and requested Southwest to fulfill its earlier undertaking. Further, in September, 1979, the Association, by letter, reminded Southwest that it had missed the monthly installment due in August on the annual assessment on each of twenty–one numbered lots. By the time of entry of judgment, the unpaid monthly installments of the annual assessment on each numbered lot included August, September, October, November and December. The Association sought recovery of the unpaid monthly installments of the annual assessment with interest, collection costs, and attorney's fees, due on twenty–one numbered lots in "The Greene," plus a total of $733.00 in restoration costs (which had been apportioned to each of the twenty–one numbered lots) and the establishment and foreclosure of the Association's lien on the twenty–one numbered lots toward the satisfaction of these asserted obligations of Southwest. Southwest answered the Association's suit with a general denial and a counterclaim which asserted that the Association had breached its duty, set out in the Declarations, to promote the "recreation, health, safety, and welfare" of the residents and that "as a direct result of the plaintiff's failure to maintain and promote the safety of The Greene, the defendant's properties have sustained substantial damages by way of destruction and damages by vandals, as well as by theft and removal of its personalty and fixtures from its various properties."

 The Association filed its motion for summary judgment relying upon the affidavit, with supporting documents, of its president and the affidavit of its attorney as to attorney's fees. Southwest responded to the motion relying upon the affidavit of the chairman of its Board of Directors. Southwest first urges that the summary judgment fails to offer admissible proof that Southwest was, in fact, the owner, that is, the "record holder of fee simple title," of the numbered lots to which the monthly installments of the annual assessment accrued during the months in question. The Association responds that the affidavit of the president provides this necessary proof in two separate recitals. The president of the Association first asserts in his affidavit that:

3. The Defendant as owner of Lots 1, 2, 3, 5, 6, 7, 8, 9, 10, 13, 14, 15, 26, 28, 29, 30, 32, 34, 36, 37 and 38 in Block 2 of the Greene Addition, an addition to the City of Duncanville, Texas, was a "member" of the Greene Home Owners Association, Inc., as that term is defined in the Declaration of Covenants and Restrictions and therefore became obligated to pay dues and assessments as provided for in the Declaration.

Both "owner" and "member" are terms equating to "fee simple title" under the Declaration relied upon by both parties. Fee simple title to real estate is not a fact which any witness is capable of knowing but a legal conclusion to be drawn from proven facts, *Hodge v. Ellis*, 268 S.W.2d 275 (Tex.Civ.App.–Fort Worth 1954) *affirmed in part and reversed in part*, 154 Tex. 341, 277 S.W.2d 900 (1955). *Cross v. Thomas*, 264 S.W.2d 539 (Tex.Civ.App.–Fort Worth 1953, writ ref'd n.r.e.). *Dimmitt Elevator Co. v. Carter*, 70 S.W.2d 615 (Tex.Civ.App.–Amarillo 1934, no writ). A qualified witness may express his opinion as to fee simple title, relying on proven facts, to the court which may, by its judgment, legally conclude, on such proven facts and such opinion, that fee simple title exists. We hold that the affidavit of the president of the Association reflects neither facts from which the legal conclusion of fee simple title could be drawn nor an opinion, with supporting qualifications of the witness, on proven facts, from which the legal conclusions of fee simple title could be supported.

The president's affidavit, paragraph 3, fails to provide the required proof of an essential element necessary to justify the asserted assessment against Southwest. We do not hold that all conclusions, whether of law or of fact, must be excluded in summary judgment proceedings, therefore we limit our holding to the cause before us. *See* discussion in *Nichols v. Seale*, 493 S.W.2d 589, 593 (Tex.Civ.App.–Dallas 1973) *rev'd on other grounds*, 505 S.W.2d 251 (Tex.1974).

■ The Association also responds that Southwest was shown as the owner, as defined, of the numbered lots during the time in question on the Association's business records, which were sought to be qualified for admission in the president's affidavit, and were attached to the affidavit as an exhibit. The crucial question in qualification of business records applicable here is that the person making the entry into the records had knowledge of the facts entered. We have determined that "fee simple title" is not a fact but a legal conclusion to be drawn from proven facts. Since the president of the Association did not show by his affidavit that the unknown person making the entry in the Association's records had both the knowledge of facts from which the legal conclusions of fee simple title could be drawn or was qualified to draw such a conclusion, the business records of the Association were inadmissible to prove that Southwest was the owner, as defined, of the lots in question during the time in question.

■ The Association also responds that Southwest admitted, by its answers to a request for admissions, that it was the owner, as defined, of the lots in question during the time in question. The admissions relied upon are:

10. Admit that Southwest Industries Investment Company received invoices from Plaintiff dated August 1, 1979, September 1, 1979 and October 1, 1979 for the assessments due for those respective months on the 21 lots owned by Southwest Industries Investment Company.

Answer: Admit.

13. Admit that Southwest Industries Investment Company received a letter from the Plaintiff dated September 11, 1979, notifying Southwest Industries Investment Company of the amounts owed as of that date to the Plaintiff, and that liens had been filed with the County Clerk on the 21 lots owned by Southwest Industries Investment Company.

Answer: Admit.

15. Admit that Southwest Industries Investment Company has failed to pay the Plaintiff for the dues and assessments assessed against the 21 lots owned by Southwest Industries Investment Company for the months of August, September and October 1979.

Answer: Admit.

None of the quoted requests ask Southwest to directly admit that it held record fee simple title to the lots in question during the time in question. While each question asked includes some verbiage as to title, the specific question asked and admitted is controlled by the verb and object employed. In question 10 the verb is "received" and the verb's object is "invoices." In question 13 the verb is "received" and the verb's object is "letter." In question 15 the verb is "failed" and the verb's object is "[to] pay." We hold that these admissions do not admit that Southwest held record fee simple title to the lots in question during the time in question. We conclude that since the summary judgment record fails to establish the Association's right to assess or recover from Southwest the monthly installments of the annual assessment for the numbered lots during the months in question, the judgment for this claim, together with interest, collection expense, and attorney's fee, as well as the establishment and foreclosure of the lien, must be reversed and remanded.

The Association's judgment for $733.00 for the restoration of the common property occasioned by the construction activity of Southwest was fully sustained by the summary judgment and no challenge thereto is presented on appeal. The amount of this claim was joined with the claim for assessments by the Association in order to enhance the lien the Association asserted. A

lien for restoration costs is not provided by the Declarations. Our reversal of the assessment claim and lien cures any error. In order that this unchallenged restoration claim may be recognized, we modify the trial courts judgment to the extent that the Association shall recover from Southwest the sum of $733.00, together with interest thereon at the rate of 6 percent per annum from May 24, 1977 to December 17, 1979 (the entry date of judgment in the trial court) and interest at the rate of 9 percent per annum from December 17, 1979, until satisfied, together with one–half of the costs assessed in the trial court and in this court. See *Tank Lining Corporation v. Missouri Pacific Railroad Co.*, 598 S.W.2d 955 (Tex.Civ.App.–Dallas 1980, no writ).

■ Southwest further complains that the summary judgment record fails to support the "take–nothing" judgment on its counterclaim. Southwest's counterclaim urged that the Declarations imposed a duty on the Association to promote "the recreation, health, safety, and welfare of the resident." Southwest does not urge that any ambiguity need be resolved but relies on the plain words employed, given their usual ordinary meaning. Southwest, in wholly relying on the Declaration to establish the duty, presents a question of law for the court because, whether such duty exists or not, must be ascertained by the legal construction given the Declaration by the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex.1962). The particular words of the Declaration relied upon by Southwest appear in the Declarations, Article V., Section 2, stating as follows:

> *Section 2. Purpose of Assessment.* The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety and welfare of the residents in the area to be known as The Greene, addition to the City of Duncanville Texas . . .

Southwest urges that the foregoing words impose a duty on the Association of such a nature that both theft and vandalism of Southwest's property, as well as lost sales (lost sales first mentioned in responsive affidavit), if proved on trial, would constitute a breach of that duty. If such a duty is found in the quoted words, then a fact issue as to the breach of that duty, and damages, exists for trial. If no such duty is imposed in the Declaration, however, then there is no need for a trial and the summary judgment is correct. The trial court concluded that, as a matter of law, the Declarations relied upon by Southwest imposed no duty on the Association, the nature of which was such that theft and vandalism or lost sales constituted a breach of such duty. We agree. Southwest fails to urge that the assessments have not been used exclusively for the *promotion* of the recreation, health, safety and welfare of the residents in violation or breach of the plain duty imposed. Apparently, Southwest would read the quoted words so as to make the Association treat the assessment as a premium to *insure* that the residents would be free from theft and vandalism and to *assure* that the resident's lot, and improvements thereon, would be readily salable. We find that the construction urged by Southwest cannot be supported by any fair reading of the words employed and hold that the construction given by the trial court, as a legal conclusion, was correct and warranted the summary disposition of Southwest's counterclaim.

Consequently, (1) we modify the trial court's judgment so that the Association recovers judgment against Southwest for $733.00 with interest thereon at the rate of 6 percent per annum from May 24, 1977 to December 17, 1979, and thereafter interest at the rate of 9 percent per annum until satisfied together with one–half the costs accrued and assessed in the trial court and this court; (2) we affirm the trial court's judgment that Southwest take nothing by its counterclaim; and (3) we reverse and remand the Association's cause of action against Southwest for unpaid monthly installments of the annual assessment to "owners" and "members" upon such lots

and for such months as Southwest held fee simple title, together with interest, collection expenses, and attorney's fees, as provided in the Declaration. The remaining one–half of the costs assessed in the trial court and in this court are assessed to the Association.