Consolidated Rail Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Respondent.

Argued May 7, 1985, before Judges CRAIG and PAL-LADINO, and Senior Judge KALISH, sitting as a panel of three.

*Michael E. Garner, Melvyn S. Mantz & Associates, P.C.,* for petitioner.

*Felix Thau,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, August 1, 1985:

Consolidated Rail Corporation (Conrail) appeals an order of the Board of Claims which decided in favor of the Pennsylvania Liquor Control Board (PLCB) in an action filed by Conrail against the PLCB for recovery of unpaid charges on various contracts for shipment of wine. We must determine[1]

---

[1] In reviewing decisions of the Board of Claims, Commonwealth Court's scope of review is limited to determining whether the board committed an error of law or made findings of fact which are not supported by substantial evidence. The credibility of witnesses and the resolution of conflicting evidence is for the board to determine. *Department of Transportation v. Westmoreland Engineering Co.,* 63 Pa. Commonwealth Ct. 318, 438 A.2d 1005 (1981).

whether the PLCB is liable to Conrail for charges connected with delays in unloading the rail freight cars, and for charges for protective services (*i.e.,* heating and cooling the freight cars en route) provided by Conrail at the request of the shippers, who produce the wine.

Initially, however, we must consider the PLCB's motion to quash this appeal on the grounds that Conrail failed to preserve the issues here presented by not filing appropriate post-trial motions. The PLCB argues that 4 Pa. Code §121.1 requires actions before the Board of Claims to be, as nearly as possible, in accordance with the Pennsylvania Rules of Civil Procedure, and that, therefore, the proper procedure for appealing the board's order was first to file a motion for post-trial relief in accordance with Pa. R.C.P. No. 227.1.

However, the PLCB has cited no precedent requiring Board of Claims litigants to move that body for post-trial relief in order to achieve an appealable final order.[2] Because the Board of Claims has never treated Pa. R.C.P. No. 227.1 as being applicable to its proceedings, this court will not superimpose such a requirement, which would achieve nothing but delay.

Hence, the motion to quash is denied.

As to the merits, Conrail's petition before the board alleged that Conrail performed certain transportation services for the PLCB, and charged the PLCB in accordance with tariffs on file with the Interstate Commerce Commission. Although Conrail has billed the PLCB, the PLCB has not paid for those charges, and denies any liability for them.

---

[2] The PLCB has cited only *Gibson v. Miller*, 265 Pa. Superior Ct. 597, 402 A.2d 1033 (1979), which involved a judicial proceeding and is therefore clearly inapposite.

At the hearing before the board, Conrail called John Dill, who, as assistant manager of the freight collection department at Conrail, was responsible for maintaining and keeping custody of accounts receivable records at Conrail. Dill identified various freight and way bills, statements of account, and ICC tariffs pursuant to which the charges were calculated. Counsel stipulated that, as custodian of the records, Dill did not have specific information with regard to the circumstances surrounding the individual bills, and that his testimony was offered for the limited purpose of authenticating the bills as business records.

The PLCB had no objection to Conrail's admission of those bills into evidence with the understanding that the documents were bills for services rendered, and did not purport to represent the contract pursuant to which the services were performed. Conrail agreed, stating "[t]hat is the extent for which they are admitted."

The hearing examiner admitted the tariffs into evidence over the PLCB's objection that Conrail had not sufficiently proved that those tariffs were on file with the ICC, nor that they were in effect at pertinent times. However, counsel stipulated that "the responsibility of particular parties for particular types of charges is not governed by the tariffs themselves, but by the Interstate Commerce Act."

The board entered judgment in favor of the PLCB, based, in part, on its conclusion that the evidence presented by Conrail, consisting only of the bills, statements of account, tariffs, and Dill's testimony authenticating those documents, was not sufficient to establish any contractual or quasi-contractual basis for liability on the part of the PLCB. As the board pointed out, Dill testified on the contrary that most

of the bills in question were marked "pre-paid," indicating that all freight charges were the responsibility of the shipper.

Conrail argues that the board erred in not concluding that the PLCB was liable for the contested charges based upon its status as the consignee and the beneficial owner of the goods shipped in interstate commerce. Conrail relies on *Pittsburgh v. Fink,* 250 U.S. 577 (1919), where the Supreme Court held that a consignee's liability is quasi-contractual, and arises by operation of law when the consignee accepts delivery of the goods, because the carrier thereby gives up its right to exercise a carrier's lien to enforce payment of the freight charges. Conrail also points to a provision in the Interstate Commerce Act, 49 U.S.C. §10744(a)(1), that absolves consignees from liability for certain freight charges where the consignees act merely as agents for the beneficial owner, and provides the carrier with sufficient notice of the agency relationship and the identity of the beneficial owner. Conrail urges us to infer from that provision that a consignee who is also the beneficial owner, as the PLCB allegedly is here, is liable to the carrier for the freight charges.

Despite Conrail's argument that the consignee's liability is quasi-contractual and arises from conduct rather than from an express agreement of the parties, the consignee's conduct assumes quasi-contractual significance only by virtue of the contract for shipment of goods between the shipper and the carrier, which identifies the parties, including the consignee, as such, and assigns responsibility for particular charges. Although a consignee's liability may rest upon quasi-contract, a party's status as consignee is a matter of contract, and must be established as such.

In *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336 (1981), the United States Supreme Court summarized the appropriate means of establishing liability for freight charges as follows:

> Since 1918, the ICC [Interstate Commerce Commission] has prescribed a uniform bill of lading for use on all interstate domestic shipments of freight by mail [citation omitted]. The bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers . . . unless the bill provides to the contrary, the consignor remains primarily liable for the freight charges. When the ICC first promulgated the uniform bill of lading, it stated:
>
> "The consignor, being the one with whom the contract of transportation is made, is originally liable for the carrier's charges and unless he is specifically exempted by the provisions of the bill of lading, or unless the goods are received and transported under such circumstances as to clearly indicate an exemption for him, the carrier is entitled to look to the consignor for his charges." In re Bills of Lading, 52 I.C.C. 671, 721 (1919).

456 U.S. at 342-43.

Conrail did not introduce the bills of lading into evidence, and did not offer any documentation that establishes the contractual relationship of the parties. Although the way bills name the PLCB as consignee, those documents do not confer consignee status on the PLCB, nor do they provide a sufficient basis for determining liability under the Interstate Commerce Act. In the absence of evidence upon which the board could base a finding that the PLCB was a consignee

in any of the challenged shipments,[3] which was essential to establishing quasi-contractual liability, the board properly concluded that Conrail did not meet its burden of proving that the PLCB was liable for the contested charges.[4]

Because of our disposition on the merits of this case, we do not reach consideration of Conrail's arguments with regard to the statute of limitations, nor the PLCB's argument that the Board of Claims had jurisdiction over only those claims where the amount in controversy exceeded $300.

Accordingly, we affirm.

### ORDER

Now, August 1, 1985, the order of the Board of Arbitration of Claims, at Docket No. FC-292-82, dated August 16, 1984, is affirmed.

---

[3] Contrary to Conrail's assertion in its brief, the parties neither alleged nor admitted PLCB's consignee status in their pleadings before the board.

[4] Although the lack of evidence to establish a statutory, contractual, or quasi-contractual basis for liability was alone sufficient for judgment in favor of PLCB, the board also based its decision on Conrail's failure to produce any evidence of who caused the delays, which was necessary to identify the party responsible for that alleged breach.