[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 2, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15418

_____

D. C. Docket No. 07-00155-CV-4

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff-Appellant,

versus

BILLY GROVES,
individually,
d.b.a. Savannah Re-Load,
SAVANNAH RE-LOAD, et al.,

Defendants,

BRAMPTON ENTERPRISES, LLC,
d.b.a. Savannah Re-Load,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 2, 2009)

Before CARNES, FAY and ALARCÓN,[*] Circuit Judges.

FAY, Circuit Judge:

This appeal arises from a dispute between a rail carrier and a warehouseman regarding liability for demurrage, *i.e.*, penalties assessed for the undue detention of rail cars. Norfolk Southern Railway Company sued Brampton Enterprises, LLC d/b/a Savannah Re-Load for demurrage accrued over the six month period from March to August 2007. Savannah Re-Load denied liability for the demurrage charges and, despite being named as consignee on the bills of lading, maintained it was not a party to the shipping contracts. Norfolk Southern asserts that as the named consignee Savannah Re-Load became a party to the contracts by accepting the shipments. The district court granted summary judgment in favor of Savannah holding that a freight re-loader cannot, without notice, be made a consignee by the unilateral action of a third party. We affirm.

## I.

Brampton Enterprises operates a warehouse business under the trade name Savannah Re-Load ("Savannah"). As a warehouseman, Savannah receives freight at its facility, unloads it from the containers in which it arrives, reloads it into

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

appropriate containers for export, and forwards it to various ports according to instructions received from the freight forwarder. Savannah has no ownership interest in the freight it handles and is not a party to the transportation contracts. The freight forwarding companies make transportation arrangements without input from or notice to Savannah.

In late 2006 Galaxy Forwarding ("Galaxy") began sending freight to Savannah's facility via railcar delivered by Norfolk Southern Railway Company ("Norfolk"). According to Savannah owner William "Billy" Groves, Galaxy was aware of Savannah's operational capacity and controlled the amount of freight it received. Galaxy merely informed Savannah when shipments were en route and provided it with instructions regarding the export of the shipment. Galaxy was the only freight forwarder to send Savannah freight via rail and arranged transportation for all the freight shipments at issue. These freight shipments originated from various domestic shippers and were being exported to overseas recipients by Galaxy. Savannah had no knowledge of the origins or final destinations of the freight it handled.

Norfolk transported the rail freight to Savannah pursuant to bills of lading[1] received from Galaxy. Before rail cars were delivered, Norfolk would notify Savannah that rail cars from certain shippers had arrived and were ready for delivery. Once Savannah approved the delivery, Norfolk would perform a "switch" by removing any empty rail cars and replacing them with new rail cars to unload. Norfolk would perform only one "switch" per day delivering as many as five cars at a time.

Beginning in March 2007, Galaxy began sending rail freight to Savannah at such a volume that demurrage began to accrue. Pursuant to Norfolk's tariff, a customer is allowed two days to unload freight without incurring demurrage. At the end of each month, a customer's total demurrage days are netted against total credits. Credits are calculated by multiplying the number of rail cars delivered during a particular month by two, which accounts for the two "free" days all customers are given to unload delivered rail cars. If total demurrage exceeds total credits, those days are charged at the daily rate published in Norfolk's tariff.

The right to assess detention or demurrage charges against parties to a transportation contract for delay in releasing transportation equipment is well

[1]A bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342, 102 S. Ct. 1815, 1820 (1982).

established at common law. Motor carriers term such a delay as detention while rail carriers refer to it as demurrage. Prior to rail transport, demurrage was recognized in maritime law as the amount to be paid for delay in loading, unloading, or sailing beyond the time specified. Unlike maritime law, a railroad carrier can collect demurrage even if the shipping contract contains no provision to that effect. In the railroad setting, demurrage charges serve a twofold purpose: "One is to secure compensation for the use of the car and of the track which it occupies. The other is to promote car efficiency by providing a deterrent against undue detention." *Turner, Dennis & Lowry Lumber Co. v. Chicago, Milwaukee & St. Paul Ry. Co.*, 271 U.S. 259, 262, 46 S. Ct. 530, 531 (1926). As such, demurrage charges are properly assessed even if the cause for the delay is beyond the party's control, unless the carrier itself is responsible for the delay.

While demurrage remains a matter of contract, railroads are now required by federal statute to assess demurrage charges subject to oversight by the Surface Transportation Board. Norfolk seeks demurrage charges against Savannah pursuant to the Interstate Commerce Commission Termination Act (ICCTA), requiring rail carriers to "compute demurrage charges, and establish rules related to those charges . . ." 49 U.S.C. § 10746 (1995). Norfolk publishes the applicable demurrage rules and charges in Freight Tariff NS 6004-B, which states in relevant

5

part that "[d]emurrage charges will be assessed against the consignor[2] at origin or consignee[3] at destination who will be responsible for payment." Tariff NS 6004-B, Item 850(5) (2000) (footnotes added). Thus, Norfolk is required by the ICCTA and the terms of its own tariff to assess demurrage charges against the shipment's consignee for any delay in unloading the rail cars at their destination.

Savannah was a named consignee on the bills of lading for the freight shipments at issue. However, many of these bills of lading also named an ultimate consignee and printed copies of the electronic bill of lading data submitted by Norfolk did not actually contain the word consignee. Savannah maintains that it did not consent to being named on the bills of lading and was never informed that any bill of lading identified it as a consignee. The record indicates that neither Galaxy, Norfolk, nor any other entity provided Savannah with the bills of lading for the freight it handled. Thus, Savannah was a named consignee on the bills of lading without notice of, or consent to, such designation.

---

[2]A consignor is "[o]ne who dispatches goods to another on consignment." BLACK'S LAW DICTIONARY 327 (8th ed. 2004). A consignment is "[a] quantity of goods delivered by this act, esp. in a single shipment." BLACK'S LAW DICTIONARY 327 (8th ed. 2004).

[3]A consignee is "[o]ne to whom goods are consigned." BLACK'S LAW DICTIONARY 327 (8th ed. 2004). The Federal Bills of Lading Act and Norfolk's Tariff define consignee in a consistent manner. See 49 U.S.C. § 80101(1) (1994) ("'consignee' means the person named in a bill of lading as the person to whom the goods are to be delivered"); Tariff NS 6004-B, Item 200(6) (2000) ("The party to whom a shipment is consigned or the party entitled to receive the shipment").

In addition to the freight at issue in this appeal, Norfolk routinely delivered freight to Savannah's facility pursuant to bills of lading where Savannah was not the named consignee. The instant dispute arose when Norfolk began invoicing Savannah for demurrage on all shipments delivered to Savannah's facility irrespective of whether Savannah was the named consignee. Savannah refused to pay and in late 2007 Norfolk sued for demurrage on all shipments, without regard for who was named as consignee. After Savannah moved for summary judgment, Norfolk amended its complaint, to exclude demurrage for freight shipments where Savannah was not named as consignee. This amendment had the effect of reducing Norfolk's demand from $133,080.00 to $70,680.00.

In early 2008 Savannah moved for summary judgment on all claims arguing that it was not liable for demurrage because Norfolk could "only recover demurrage against a consignee or a party to the transportation contract." Savannah stated that "the issue before the Court is whether another's unilateral act of identifying 'Savannah Re-Load' as the consignee without [its] knowledge or permission is sufficient to make it a consignee and therefore liable for demurrage." Norfolk moved for partial summary judgment as to the issue of Savannah's liability for demurrage. Norfolk argued that Savannah was liable for demurrage because Savannah was identified as consignee on the bills of lading at issue,

7

Savannah accepted delivery of the rail cars and the freight, and Savannah did not notify Norfolk of its agent status.

The district court granted Savannah's motion for summary judgment and denied Norfolk's motion for partial summary judgment, holding that Savannah was not liable for demurrage. The court stated that a bill of lading is essentially a contract and Savannah could not be made a party to that contract without its knowledge or consent. In sum, the court held that Savannah "cannot be made a consignee by the unilateral action of a third party, particularly where Savannah Re-Load was not given notice of the unilateral designation in the bills of lading." Norfolk appeals the district court's denial of its motion for partial summary judgment and grant of summary judgment to Savannah.

## II.

We review a district court's grant or denial of summary judgment *de novo*, considering all the facts and reasonable inferences in the light most favorable to the nonmoving party. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys. Inc.*, 541 F.3d 1278, 1287 (11th Cir. 2008). Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

8

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553 (internal quotations omitted). If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

*A. Demurrage liability*

We begin our analysis by examining the basis for the district court's decision, and in doing so, review several fundamental principles of law that define demurrage liability. First, demurrage is considered part of the transportation charge and under the tariff system is imposed as a matter of law. However, "[b]efore such transportation-related assessments such as detention charges can be imposed on a party . . . there must be some legal foundation for such liability

9

outside the mere fact of handling the goods shipped." *Middle Atl. Conference v. United States*, 353 F. Supp. 1109, 1118 (D.D.C. 1972) (three-judge panel).[4]  In *Evans Prods. Co. v. Interstate Commerce Comm'n*, the Seventh Circuit held that "[l]iability for freight charges may be imposed only against a consignor, consignee, or owner of the property, or others by statute, contract, or prevailing custom."  729 F.2d 1107, 1113 (7th Cir. 1984) (citations omitted); *see also S. Pac. Transp. Co. v. Matson Navigation Co.*, 383 F. Supp. 154, 156 (N.D. Cal. 1974) ("The obligation to pay demurrage arises either out of contract, statute or prevailing custom"); *Middle Atl.*, 353 F. Supp. at 1118 (liability for demurrage "must be founded either on contract, statute or prevailing custom").  Norfolk has not offered any evidence of prevailing industry custom or applicable statute that would hold non-parties to a shipping contract liable for demurrage.  Furthermore, it is undisputed that Savannah is neither consignor nor owner of the freight.  Thus, Savannah is liable for demurrage only if it were the consignee or contractually assumed responsibility for the charges.

A freight handler such as Savannah is free to contractually assume liability for demurrage charges and "this is sometimes done through average demurrage

_____

[4]We note that research has disclosed very few opinions by federal circuit courts dealing with the narrow issue presented in this case.  Thus, we have cited those authorities that are available.

10

agreements to promote their own business and in some instances to obtain the benefits of lower detention costs for the benefit of their customers." *Middle Atl.*, 353 F. Supp. at 1122. However, in the instant case, there is no evidence to suggest that Savannah independently contracted with either Norfolk or Galaxy regarding demurrage charges. This leaves us only with the question of Savannah's consignee status to determine demurrage liability.

As mentioned previously, the bill of lading is the basic transportation contract between the shipper-consignor and the carrier. Thus, as an original party to the shipping contract, a consignor is clearly liable for demurrage. However, "a consignee's liability is quasi-contractual, and arises by operation of law when the consignee accepts delivery of the goods . . ." *Consol. Rail Corp. v. Com., Pa. Liquor Control Bd.*, 496 A.2d 422, 424 (Pa. Cmwlth. 1985). *See also Pittsburgh v. Fink*, 250 U.S. 577, 581, 40 S. Ct. 27 (1919) ("The weight of authority seems to be that the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the carrier"). By accepting delivery of a shipment, the consignee's conduct assumes a quasi-contractual significance by virtue of the transportation contract, which identifies the parties and assigns responsibility for particular charges. The contract implied from the acceptance of a shipment extends no further than the conditions upon which its delivery is made dependant.

11

Unless the bill of lading provides to the contrary, the consignor remains primarily liable for the freight charges and pursuant to the carrier's tariff, the consignee becomes liable for demurrage charges at the freight's destination. Thus, only an original party to the rail transportation contract, or a consignee by virtue of acceptance of the goods, may be liable for demurrage. As a district court in our circuit put it, "all the reported opinions agree that only a party to the rail transportation contract may be liable for demurrage." *CSX Transp., Inc. v. City of Pensacola, Fla.*, 936 F. Supp. 880, 884 (N.D. Fla. 1995); *see also Union Pac. R.R. Co. v. Ametek, Inc.*, 104 F.3d 558 (3d Cir. 1997) (holding demurrage could not be assessed against a warehouse that was not a consignee or other party to the transportation contract); *Matson*, 383 F. Supp. at 156 (the obligation to pay demurrage "arises out of the contractual relationship and may only be imputed to parties to the contract"); *Middle Atl.*, 353 F. Supp. 1109 (finding a carrier's proposed tariff unlawful to the extent that it attempted to impose liability for demurrage charges on non-parties to the transportation contract); *Missouri, K. & T. Ry. Co. of Texas v. Capital Compress Co.*, 110 S.W. 1014, 1016 (Tex. Civ. App. 1908) (holding a cotton compress company not liable to carrier for demurrage because "[t]he findings of fact fail to show any contractual relation between them in reference to the shipment of the cotton").

There are exceptions to a consignee's demurrage liability. A consignee may avoid demurrage liability by notifying the carrier of its agency status prior to accepting delivery of the shipment. "The law is well settled that an agent for a disclosed principal is not liable to a third person for acts within the scope of agency." *Middle Atl.*, 353 F. Supp. at 1120-21; *See also Whitney v. Wyman*, 101 U.S. 392, 396 (1879) ("Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so"). The ICCTA recognizes the common law rule of agency and provides in relevant part:

> When the shipper or consignor instructs the rail carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property--
> (A) of the agency and absence of beneficial title; and
> (B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

49 U.S.C. § 10743(a)(1) (1995). Thus, an agent-consignee can avoid demurrage liability by notifying the carrier of its agency status and providing the carrier with

the name and address of the shipment's beneficial owner prior to accepting delivery.

Thus far our analysis has surveyed the undisputed aspects of demurrage liability. The parties agree that an entity must be a party to the transportation contract to be liable for demurrage charges, that a consignee becomes a party to the transportation contract upon accepting the freight consigned to it, and that a consignee may avoid demurrage liability by disclosing its agency status prior to accepting delivery of the shipment. We now turn to the key question of whether Savannah was a consignee in the context of this case.

*B. A consignee by any other name . . .*

The issue before the court is whether Savannah was a consignee of the freight delivered by Norfolk. Norfolk contends that Savannah was a consignee because it was identified as such on the bills of lading and accepted delivery of the shipments. Savannah argues that it cannot be made a consignee merely because a third party unilaterally listed it as such without its knowledge or consent. Both the Seventh and Third Circuits have addressed this issue in cases involving similar fact patterns. *See Illinois Cent. R.R. Co. v. South Tec Dev. Warehouse, Inc.*, 337 F.3d 813 (7th Cir. 2003); *CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247 (3d

14

Cir. 2007), *cert denied*, 128 S. Ct. 1240 (2008). The Seventh and Third Circuits reached differing conclusions on this issue resulting in a conflict of authority among the two circuits. *See South Tec*, 337 F.3d at 821; *Novolog*, 502 F.3d at 262.

In *South Tec*, the Seventh Circuit reasoned that the preliminary issue was whether the defendant warehouseman was a consignee. Although the case was remanded to the district court for determination of the warehouseman's status, the Seventh Circuit stated that "being listed by third parties as a consignee on some bills of lading is not alone enough to make [a warehouseman] a legal consignee liable for demurrage charges . . . ." *South Tec*, 337 F.3d at 821.

Like *South Tec*, the defendant in *Novolog*, who was named as consignee without its authorization, argued that "the shipper's or carrier's unilateral decision to designate [it] as the consignee, without [it]'s permission and where [it] is not the ultimate consignee of the freight, cannot establish its status as a consignee for purposes of demurrage liability under the statute or otherwise." *Novolog*, 502 F.3d at 257. The Third Circuit disagreed for three reasons. *See id.* First, because "nothing in the statutory language [of section 10743(a)(1)] suggests that it intends to restrict the term 'consignee' to the ultimate consignee of the freight or use it to mean anything other than the person to whom the bill of lading authorized delivery and who accepts that delivery." *Id.* Second, because "to hold that the documented

15

designation of an entity as a consignee and that entity's acceptance of the freight is insufficient to hold it presumptively liable for demurrage charges would frustrate the plain intent of the statute, which is to establish clear, easily enforceable rules for liability." *Id.* Third, because it would be equitable to treat the named consignee as presumptively liable, as under the statutory scheme "the named consignee can avoid liability in two ways: first, by refusing the freight . . . and second, by providing the carrier timely written notice of agency under Section 10743(a)(1), if appropriate." *Id.* at 259.

The *Novolog* court declined to follow the Seventh Circuit's conclusion in *South Tec* and held that "an entity named on a bill of lading as the sole consignee, without any designations clearly indicating any other role, is presumptively liable for demurrage fees on the shipment to which that bill of lading refers. *Id.* at 262. A party may rebut that presumption by showing that it never accepted delivery of the shipment, or that it was acting as an agent and followed the notification provisions of 49 U.S.C. § 10743(a)(1). *See id.* at 250, 59. Ultimately, the *Novolog* court remanded the case because "the factual record was not sufficiently developed . . . [t]o determine what the bills of lading showed." *Id.* at 250.

Norfolk relies almost exclusively on the Third Circuit's decision in *Novolog* and argues that as the named consignee on the bills of lading, Savannah was

16

required to either refuse delivery of the shipments or comply with the agency notification requirements of the ICCTA to avoid demurrage liability. However, Norfolk incorrectly assumes that Savannah is the consignee for the shipments at issue simply because it is listed as such on the bills of lading. Norfolk has made no effort to establish Savannah's status as a consignee through either interrogatories or deposition testimony. In fact, Savannah's status as a consignee was neither alleged nor admitted in the pleadings.

Norfolk further argues that section 10743(a)(1) establishes a presumption of liability for demurrage charges. However, section 10743(a)(1) "applies only to agents who are also consignees, and not to agents who are not consignees." *South Tec*, 337 F.3d at 817. Furthermore, that section "speaks only to the 'nonliability' in certain narrow situations . . . but in no way can be read to impose liability on an agent not a party to the contract." *Middle Atl.*, 353 F. Supp. at 1120. If we were to accept Norfolk's assertion that section 10743(a)(1) establishes a presumption of liability, then we would also have to accept that merely naming an entity as consignee on a bill of lading creates a presumption of that status. We are unwilling to accept either proposition and agree with the district court that "the *Novolog* rule of presumptive liability cannot function in a situation where the receiver of freight is not given notice that it has been listed as a consignee by third parties."

Norfolk maintains that Savannah had either actual or constructive knowledge of its designation as consignee on the bills of lading. Yet, Norfolk has failed to present any evidence that Savannah was informed of its consignee designation prior to delivery. Thus, no evidence of actual knowledge exists in the record. Norfolk asks: "if Savannah is neither the consignee nor a disclosed agent of a consignee, how or why is Savannah accepting delivery of the freight?" This question implies that Savannah should have known it was the named consignee because freight shipments may only be delivered to and accepted by the consignee. However, we find this argument inconsistent with the record, which indicates that Norfolk made numerous deliveries to Savannah where it was not the named consignee. Norfolk later amended its complaint to exclude these shipments from its claim for demurrage charges. Savannah cannot be expected to either refuse delivery or notify Norfolk of its agency status when it has no knowledge of which shipments, if any, it has been designated as consignee.

Norfolk emphasizes that it is "well-established and oft-repeated" that a "consignee becomes a party to the contract, and is therefore bound by it, upon accepting the freight . . . ." *Novolog*, 503 F.3d at 254. However, this does not answer the key question: how does an entity become a consignee in the first place?

As previously defined, a consignee is the party designated to receive a shipment of goods. But, consignee status is more than a mere designation. The term takes on a legal significance due to the quasi-contractual relationship that arises between the consignee and the carrier. "Although a consignee's liability may rest upon quasi-contract, a party's status as consignee is a matter of contract and must be established as such." *Consol. Rail Corp. v. Com., Pa. Liquor Control Bd.*, 496 A.2d 422, 424 (Pa. Cmwlth. 1985). Like any contractual relationship, there must be a meeting of the minds between the parties. This Circuit has previously recognized that "it is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract." *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990); *see also, e.g.*, REST (SECOND) OF CONTRACTS § 17(1) (1981) ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration"). Furthermore, it is a tenent of contract law that "a third-party cannot be bound by a contract to which it was not a party." *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Union Pac. R.R. Co. v. Carry Transit, Inc.*, No. 3:04-CV-1095B, 2005

19

U.S. Dist. LEXIS 45568, at *13 (N.D. Tex. Oct. 27, 2005) ("It is a fundamental tenent of contract law that parties to a contract cannot bind a non-party."). Thus, a party must assent to being named as a consignee on the bill of lading to be held liable as such, or at the least, be given notice that it is being named as a consignee in order that it might object or act accordingly.

Given these legal principles, we agree with the district court's holding that Savannah was not a consignee, and thus not liable for demurrage charges. Savannah did not agree to be named as consignee on the bills of lading between Norfolk and the various shippers, and was not aware of its designation as such. Savannah cannot be made a party to shipping contracts without its consent or notice of such, and thus cannot be liable to Norfolk for demurrage.

Not only is this approach in keeping with the legal principles outlined above, it also has the greatest support in the case law. *See Matson*, 383 F. Supp. at 157 (reserving the question of whether a consignee who has played an active role in the railroad transportation contract or has an interest in or control over the goods may be liable for the demurrage, but stating: "[W]here, as here, a connecting carrier-consignee is merely named in the railroad bill of lading without either more involvement on its part, or some culpability for the delay, it cannot be held liable to the railroad for demurrage. To hold otherwise on these facts would be to place a

connecting carrier's liability totally within the shipper's control, a result the Court cannot sanction."); *W. Maryland Ry. Co. v. S. African Marine Corp.*, No. 86 CIV 2059, 1987 WL 16153, at *4 (S.D.N.Y. Aug. 13, 1987) ("[W]e decline to hold, as plaintiff urges, that a connecting ocean carrier is liable for rail demurrage charges as a matter of law merely by virtue of being named by the shipper as the consignee in the rail bills of lading."); *Carry Transit, Inc.*, 2005 U.S. Dist. LEXIS 45568, at *14 (shipper's unilateral decision to list defendant as consignee on bills of lading without its consent did not transform defendant into an actual consignee liable for demurrage); *Capital Compress Co.*, 110 S.W. at 1016 (entity not liable for demurrage where mistakenly listed as consignee on bill of lading, because there was no contractual relationship between that entity and the carrier); *CSX Transp. v. Pensacola*, 936 F. Supp. at 844 (stating in dicta that "[t]he unilateral action of one party in labeling an intermediary as a consignee does not render the putative consignee liable for demurrage" and indicating that an agreement to be contractually bound is key to demurrage liability); *Evans Prods.*, 729 F.2d at 1113 ("No liability [for freight charges] exists merely on account of being named in the bill of lading . . . .").

## III.

For the foregoing reasons, the summary judgment of the district court is,

**AFFIRMED.**