[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2011
JOHN LEY
CLERK

No. 10-10977
Non-Argument Calendar
_____

D.C. Docket No. 2:08-cv-00026-JES-DNF

CANDY DILLARD,
individually and as mother
and next of friend of Reuben Fife, Jr.,

Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF JUVENILE JUSTICE,
PRISON HEALTH SERVICES, INC.,
SHERIFF KEVIN RAMBOSK,

Defendants - Appellees,

COLLIER COUNTY BCC
EMS FIRE RESCUE, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 25, 2011)

Before EDMONDSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

While in custody of the Sheriff of Collier County, Florida at the Juvenile Assessment Center in Naples, Florida, Reuben Fife, Jr. experienced seizures and was rushed to a nearby hospital. The seizures left him in a semi-vegetative state.[1] Candy Dillard, individually and as mother and next friend of her son Fife, brought suit in state court seeking damages against, among others, the Sheriff in his official capacity under both 42 U.S.C. § 1983 and Florida tort law for injuries sustained by Fife while in the Sheriff's custody. Based on the § 1983 claim against him, the Sheriff removed the lawsuit to federal court under 28 U.S.C. § 1441(c). The district court granted summary judgment to the Sheriff on the § 1983 and state negligence claims and remanded the remaining state law claims to state court.

Dillard contends that the district court failed to look at the evidence in the light most favorable to her as the non-moving party and that the record contained evidence sufficient to create genuine issues of material fact about the deliberate

---

[1] The district court noted that "[a]pparently, Fife was suffering from acute cocaine toxicity, although there is no indication in the record as to the cause of his seizures."

indifference required to prove her § 1983 claim[2] and the breach of a duty of care required to prove her state law negligence claim.

"We review de novo a district court's grant of summary judgment." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263 (11th Cir. 2010). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. at 1263–64. The moving party must point to the particular portions of the pleadings and the record, "which it believes demonstrate the absence of a genuine issue of material fact." Norfolk S. Ry. Co. v. Groves, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986)). Once the moving party demonstrates an absence of material fact, the non-moving party must show the existence of a genuine issue of material fact to avoid summary judgment. Groves, 586 F.3d at 1277. "An issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. N. Crossarm Co.,357 F.3d 1256, 1259 (11th Cir. 2004).

A.

_____

[2] The district court did not reach the issue of whether the Sheriff's custom or policy was the moving force behind his deputies' allegedly unconstitutional conduct because the court found no deliberate indifference on the part of the deputies and thus no unconstitutional conduct.

3

Dillard argues that she has pointed to evidence that created a genuine issue of material fact regarding deliberate indifference. Dillard directs our attention to the circumstantial evidence showing that Deputy Hicks, the deputy who processed Fife at the juvenile center, knew that Fife had used cocaine before being detained; that other deputies who were present at the arrest and knew Fife noticed that his eyes were "huge" and he was not his usual, outgoing self; and that another juvenile in Fife's holding cell, William Colburn, informed Deputy Hicks approximately 45 minutes before Fife's seizure episode that Fife was "really shaking and sweating really bad" to which Hicks responded, "Yeah, he is always here. He is used to it."

To prove deliberate indifference, Dillard had to present evidence that Fife had a serious medical need, Deputy Hicks was deliberately indifferent to that need, and Fife's injury was caused by Deputy Hicks' deliberate indifference. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir.2007). To show that Deputy Hicks was deliberately indifferent to Fife's serious medical need, Dillard had to prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010) (alterations omitted) (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir.2005)).

4

Even if we assume that the circumstantial evidence that Dillard directs our attention to created genuine issues of material fact about Deputy Hicks' subjective knowledge of some medical risk and a disregard of that risk, Hicks' conduct was not more than gross negligence. Fife told Deputy Hicks that he only consumed a "key" of cocaine—a small amount that would fit on the end of a house key or car key—about seven hours before being admitted to the juvenile center and more than nine hours before his seizures began. At no time did Fife request any medical assistance from Deputy Hicks or anyone else at the juvenile center. Nor did he ask the other juveniles in the holding cell to seek help for him. In fact, he told his cellmates not to seek help. Fife also appeared normal and responded appropriately to questions from several individuals. Those individuals included the deputy who arrested him and brought him to the juvenile center, and Deputy Hicks who admitted Fife to the juvenile center, and a nurse who interviewed him at the juvenile center, and another deputy who tested Fife for drugs at the juvenile center and knew him personally. Fife also appeared normal to three other juveniles in the holding cell, including William Colburn, until about 45 minutes before his seizures began.

Deputy Hicks, at the time Colburn told him about Fife's shaking and sweating, only knew that Fife had used a small amount of cocaine nearly nine

hours before and had been acting normal up to that point. Given that information, not acting on Colburn's isolated comment that Fife was "really shaking and sweating really bad" was not more than gross negligence. Deputy Hicks did not deliberately ignore repeated requests from Fife or his cellmates for medical assistance. No requests were made.

Deputy Hicks also did not deliberately ignore patently obvious risks to Fife's health. Not only is there no evidence that Deputy Hicks was aware that Fife had ingested an amount of cocaine large enough to put him at serious risk of harm, but Fife's own statements gave Hicks every reason to believe that he had only consumed a small amount and even that had been nine hours before. See Burnette v. Taylor, 533 F.3d 1325, 1333 (11th Cir. 2008) ("The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol."). In fact, once Fife began having seizures and the risk of serious harm became obvious, Deputy Hicks and others at the juvenile center responded by contacting emergency medical services and providing care to Fife until the trained medical help arrived. Deputy Hicks' inaction in the short time after Colburn's isolated comment and before the seizures began was not the type of conscious disregard that gives rise to an inference of deliberate indifference. See Goebert, 510 F.3d at 1327–28 (11th

6

Cir. 2007) (finding deliberate indifference where a prisoner's numerous personal complaints of serious medical need over the course of nearly a week and the jail doctor's recommendation to seek outside medical help were ignored by a prison official ); see also Townsend, 601 F.3d at 1158–59 (finding no deliberate indifference despite the prisoner's repeated complaints of her medical needs because the deputies did not know it was emergency).

## B.

For the state tort claim, the district court granted summary judgment because Dillard did not "point to any specific facts" in her response to the Sheriff's motion, and the district court stated that it is not required "to mine a summary judgment record searching for nuggets of factual dispute." Dillard made a more thorough effort in this Court and in her brief directs us to the same specific facts for her state law negligence claim that we have already discussed for her § 1983 claim.

Under Florida law, "corrections officers have a duty to use reasonable care to insure the safety of inmates during their incarceration." Ferguson v. Perry, 593 So. 2d 273, 277 (Fla. DCA 5th 1992). That duty entails providing first aid to detainees where the corrections officer "knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Id. But

Florida law does not require the officer "to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured." Id. at 277 n.5.

The record construed in a light most favorable to plaintiff creates a question of fact about whether Deputy Hicks had reason to know that Fife was ill or injured. Deputy Hicks, knowing that Fife had used cocaine earlier in the day, allegedly brushed aside and did not respond to Colburn's purported statement that Fife was "really shaking and sweating really bad." While ignoring that isolated comment does not rise to the deliberate indifference necessary to sustain a § 1983 claim, it does create genuine issues of material fact about whether Colburn made the comment, whether Deputy Hicks heard and ignored it, and whether Deputy Hicks acted reasonably under the circumstances by not checking on Fife before his seizures began.[3] Summary judgment was thus improperly granted on the Florida state law negligence claim against the Sheriff.

Of course, reversal of the district court's judgment on this state law claim does not entitle Dillard to judgment on that claim. Unsettled issues of fact remain to be decided. In addition, the district court has discretion on remand to decide

---

[3] Unlike § 1983, Florida state law appears to provide a limited waiver of sovereign immunity and permit actions for vicarious liability for a government employee's negligence against the employing government agency or subdivision. See Fla. Stat. § 768.28(1); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1119 n.12 (11th Cir. 2005).

whether to remand this state law claim to state court with the other ones.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

**AFFIRMED IN PART AND REVERSED IN PART.**