[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12178
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-02557-SLB

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiffs-Appellee,

versus

JEFFERSON IRON AND METAL BROKERAGE, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 21, 2012)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Norfolk Southern Railway Company sued Jefferson Iron and Metal Brokerage,

Inc., seeking to recover $126,660.00 in demurrage charges accrued by 19 of Jefferson's railcars.[1] The district court granted Norfolk's motion for summary judgment because sufficient notice had been given and it was undisputed that Jefferson had accrued the charges in question. Jefferson now appeals. Finding no error, we affirm.

Because we write only for the parties, we assume their familiarity with the facts, and do not restate them below except as necessary to explain our decision. Jefferson does not dispute that it accrued $126,660.00 in demurrage charges, but contends that Norfolk was not entitled to charge it demurrage without first providing the required notice. Because Norfolk failed to provide it with the required notice, Jefferson argues, the district court erred in granting Norfolk's motion for summary judgment. Norfolk responds that Jefferson received notice of the location of its railcars electronically.

We review *de novo* the grant or denial of summary judgment, and apply the same legal standard as the district court. *See Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1363 (11th Cir. 2011). Under Rule 56, "[s]ummary judgment is

---

[1] "The right to assess detention or demurrage charges against parties to a transportation contract for delay in releasing transportation equipment is well established at common law. Motor carriers term such a delay as detention while rail carriers refer to it as demurrage." *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1276 (11th Cir. 2009).

2

appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Brown v. Sec'y of State of Fla.*, 668 F.3d 1271, 1274 (11th Cir. 2012) (internal quotation marks omitted). *Accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

Norfolk's Freight Tariff NS 6004-C provides that demurrage charges apply to "empty Private Cars held on [Norfolk] tracks under constructive placement after notice of arrival is given to the Consignee or Consignor." It is undisputed that Jefferson's railcars were "private cars" held on Norfolk's tracks, and that Jefferson was the named consignee for the movement of the cars back to Norfolk's rail yard.

The freight tariff stated that Norfolk would provide notification of the constructive placement of all cars held on its tracks. The tariff specified that notice could be sent or given by telephone communication or by electronic means, which was defined as "[a]ny approved electronic device (i.e. AccessNS, email, telephone, facsimile) used to communicate to [Centralized Yard Operations] the disposition of a car." Additionally, the tariff clarified that, if an electronic device was utilized, notification would be considered as having been given as of the date and time of transmission, and that the notification would provide the car initial and number.

The district court concluded that the electronic information available to

3

Jefferson, through a tracing service known as "Steelroads" or through Norfolk's

AccessNS service, provided it with sufficient notice of the constructive placement of

its cars. Jefferson argues that the electronic information it received was insufficient,

but we concur with the district court.

Jefferson contends that it did not have notice of where its cars were actually

located because the tracking services only provided it with notice that the cars were

located in "North Birmingham." Jefferson also argues that the information it received

was insufficient to satisfy Norfolk's notice obligation because the information did not

provide it notice that the cars were being "held awaiting instructions." Jefferson says

that because the tariff's definition of "constructive placement" requires notice that the

car is "held awaiting instructions," Norfolk was required to provide it with notice that

its cars were being held in such a manner. Having reviewed a sample of the electronic

records made available to Jefferson by Norfolk, and the applicable tariffs, we agree

with the district court that Jefferson had notice of where its cars were located and that

its cars were "PCON," which is a code for "Placement - Constructive."[2]

---

[2] The electronic information provided the following information with respect to three of Jefferson's railcars.

| Serial | City | St | Date | Time | Event | L E | Trn Trk | Pos |
|--------|------|-----|------|------|-------|-----|---------|-----|
| 4522343974 | NORTH BIRMINGHAM | AL | 2009-08-10 | 15:30 | PCON | E | F32 | 3 |
| 4522343982 | NORTH BIRMINGHAM | AL | 2009-08-10 | 15:30 | PCON | E | F32 | 4 |
| 4528992959 | NORTH BIRMINGHAM | AL | 2009-08-21 | 18:30 | PCON | E | F32 | 2 |

4

First, RailInc Freight Tariff RIC 6007-N, which was incorporated into Norfolk's freight tariff, provides that empty cars are returned to "the origin station of the last loaded movement via the reverse of the inbound route" unless other instructions are provided. It is undisputed that Jefferson did not provide Norfolk with any other instructions. Therefore, Jefferson was presumed to know that its cars were returned to Norfolk's rail yard in North Birmingham. *See Illinois Cent. Gulf R.R. Co. v. Golden Triangle Wholesale Gas Co.*, 586 F.2d 588, 592 (5th Cir. 1978) (acknowledging that shippers are presumed to know the filed tariffs applicable to their shipments). *See also Louisville & Nashville R.R. Co. v. Mead Johnson & Co.*, 737 F.2d 683, 689 (7th Cir. 1984) ("The [Supreme Court] has held that shippers are conclusively presumed to know the filed tariffs applicable to their shipments.").

Second, because Jefferson had notice—through the electronic information provided by Norfolk—that its cars were constructively placed, and Norfolk's freight tariff defines "constructive placement" to include notice that the cars are being "held awaiting instructions," this information was sufficient to provide Jefferson with the required notice. Again, Jefferson is presumed to know the filed tariffs applicable to its shipments, and is therefore presumed to know that the definition of "constructive placement" includes that a car is "held awaiting instructions." *See Illinois Cent. Gulf R.R. Co.*, 586 F.2d at 592. *See also Scope Imps., Inc. v. Interstate Commerce*

5

*Comm'n*, 688 F.2d 992, 995-96 (5th Cir. 1982) (noting that it was not important that the notice recited the "arrival" of the containers rather than the containers' "availability" for customs inspection because the parties understood what the notice meant).

In sum, the district court did not err in granting Norfolk summary judgment. Jefferson admitted not paying the demurrage charges, and there was no genuine issue of fact as to whether Jefferson received proper notice.

Accordingly, the district court's order granting Norfolk summary judgment is affirmed.

**AFFIRMED.**