Stephanie FINI, Plaintiff,

v.

DISH NETWORK L.L.C., Defendant.

Case No. 6:12–cv–690–Orl–22TBS.

United States District Court,
M.D. Florida,
Orlando Division.

March 6, 2013.

Michael J. Vitoria, William Peerce Howard, Morgan & Morgan, PA, Tampa, FL, for Plaintiff.

Benjamen E. Kern, Eric Larson Zalud, Benesch, Friedlander, Coplan & Aronoff, LLP, Columbus, OH, Jeffrey S. Weiss, Gregg A. Johnson, Brown, Garganese, Weiss & D'Agresta, PA, Orlando, FL, for Defendant.

## ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court on Plaintiff Stephanie Fini's ("Plaintiff") Motion for Partial Summary Judgment (Doc. No. 41), to which Defendant, Dish Network L.L.C. ("Defendant"), responded (Doc. No. 55), and Defendant's Motion for Summary Judgment (Doc. No. 46), to which Plaintiff responded (Doc. No. 53). Plaintiff also filed a Notice of Supplemental Authority (Doc. No. 69), to which the Court permitted Defendant to respond (Doc. No. 73).

## I. BACKGROUND [1]

This case concerns a series of calls by Defendant to Plaintiff's personal cell phone concerning the debt of a third person with whom Plaintiff had no relationship. The facts are relatively simple, though disputed in at least one key respect. Plaintiff's Motion for Summary Judgment pertains only to fourteen calls, admitted by Defen-

---

1. Except where indicated otherwise, these are undisputed facts. Where they conflict, the Court interprets all facts in the light most favorable to the nonmoving party.

dant, that allegedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). Defendant's Motion seeks Summary Judgment with respect to liability for all calls alleged by Plaintiff under the TCPA as well as her claim under the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA"). Although Defendant admitted to making fifteen calls (fourteen of which were relevant), it claims that Plaintiff lacked standing to sue under the TCPA for any calls, including the admitted ones, and strenuously disputes the existence of any calls beyond those that were admitted.

## A. Facts Pertinent to Plaintiff's Motion

Plaintiff is the "owner, regular user and possessor" of a cell phone, initially acquired more than three years ago, with the assigned telephone number ending in 4239 ("Plaintiff's phone"). (Pl.'s Mot. Partial Summ. J. (Doc. No. 41), at pp. 2–3.) The phone company lists Plaintiff's husband, John, as the service subscriber for Plaintiff's phone, but Plaintiff asserts that both she and John are responsible for their joint wireless phone bills. (*Id.* at p. 3; Pl.'s Mot. Ex. 3 (Doc. No. 42–3), at p. 1.) Defendant admitted to placing fourteen relevant calls to Plaintiff's phone via an automated dialing system and prerecorded message, (Def.'s Mot. Summ. J. (Doc. No. 46), at p. 6); Plaintiff contends that more calls were made (Pl.'s Mot. Partial Summ. J. at p. 3.).

Plaintiff received the calls because one of Defendant's subscribers, JH, provided Plaintiff's phone number as his own in his initial contract for service with Defendant.[2] (Def.'s Mot. at p. 5.) JH consented to receive calls at that number from Defendant, which has an organized system for reminding customers, via automatic dialing and prerecorded messages, to pay their bills when they fail to do so. (*Id.* at pp. 5–7.) According to Defendant, JH fell behind on his payments on August 17, 2011, and this triggered a call to Plaintiff's phone on August 18 (*Id.* at pp. 8–9.) Defendant claims to have autodialed Plaintiff's phone thirteen more times between August 18 and December 21, 2011. (*Id.* at pp. 9–11.) During that period, Plaintiff or her husband called Defendant at least three times; Defendant claims that on two occasions, Plaintiff's husband requested to be placed on the "Do Not Call" list (which Defendant maintains only for telemarketing purposes) and on a third occasion to have Plaintiff's phone number "suppressed." (*Id.* at pp. 9–10.) The final call occurred on December 21, 2011, one month after this third request. (*Id.* at p. 11.) Plaintiff saved a voicemail left by Defendant during that call. The message was transcribed to state the following:

> This is an important message from Dish Network, your satellite TV provider. We have made several attempts to contact you regarding the payment of your account balance. This is a final notification regarding your outstanding account balance prior to service interruption. To continue your monthly services and avoid collection of early termination fees, please pay the total amount due shown on your last statement immediately by logging into dish.com or call 1–866–263–1911. Thank you for being a valued Dish Network Customer.

(Pl.'s Compl. at ¶ 19.)

## B. Facts Pertinent to Defendant's Motion

Defendant's Motion and both parties' subsequent Responses introduce several

---

**2.** The parties have not provided any explanation for why JH provided Plaintiff's phone number as his own.

additional facts, some of which are disputed. First, Defendant's Motion makes clear that Plaintiff has never been a customer of Defendant and has never owed Defendant any money. (*Id.* at p. 4.) Plaintiff admitted to knowing, by "August [or] September" of 2011, that Defendant was not seeking any money from her or her husband. (*Id.* at pp. 4–5 (quoting S. Fini Dep. (Doc. No. 42–1), at p. 55.))

Defendant maintains a "late payment reminder system" that, apparently automatically, calls customers with unpaid invoices once or twice per week for about a month after payment on their invoices is due. (*Id.* at p. 7.) The reminder calls stop once the customer becomes current on his account, but resume should the customer fall behind once again. (*Id.*) JH, Defendant's actual customer who supplied Plaintiff's phone number as his own, had unpaid invoices from August 17, 2011 until October 23, 2011, and again from November 17, 2011 until the calls stopped. (*Id.* at pp. 8–11; *Id.* at Ex. L.) According to the results of a search of unmodified call logs from Defendant's dialing software for JH's account, Defendant attempted to contact JH (instead reaching Plaintiff's phone) in accordance with the late payment reminder system's schedule. (*See id.* at Exs. G, H.) Nothing submitted by Defendant suggests that its autodialing system placed more than fifteen calls to Plaintiff's phone.

In her Complaint, Plaintiff claimed to have received approximately 55 calls from Defendant, playing the same or similar message each time, starting in June 2011 and continuing until December 2011.

(Pl.'s Compl. (Doc. No. 2), at ¶¶ 19–21.) Plaintiff arrived at this number because she believes that she received a minimum of four calls per month, "not including the calls she hung up on." (Pl.'s Resp. (Doc. No. 53) at p. 7.) At the close of discovery, the only evidence positively supporting this claim came from the deposition testimony of Plaintiff and her husband. (*See id.* at pp. 6–8.) Their testimony, in turn, is based purely on their own recollections of when they received calls. (S. Fini Dep. (Doc. No. 42–1) at p. 55.)[3] Their testimony is vague as to who actually received those calls: according to Plaintiff's husband, he answered her phone "at least ten (10) times." (Pl.'s Resp. at p. 7; J. Fini Dep. (Doc. No. 42–2), at pp. 20–22.)

Plaintiff attempts to cast doubt on the accuracy of Defendant's claim that it only called Plaintiff's phone fourteen times by identifying three purported flaws in Defendant's call recording system. First, she notes that "Defendant did not consider its autodialer calls 'delivered' to Plaintiff's cellular telephone number until the call was dialed, answered by a live person or Plaintiff's answering machine, and the *complete* prerecorded voice message was played in its entirety." (Pl.'s Resp. at p. 2.) Second, Plaintiff extracted from the deposition of one of Defendant's employees that "Defendant attempts up to four (4) calls a day until a prerecorded voice message is 'delivered' to the recipient of the call." (*Id.* at p. 3 (citing Picchione Dep. (Doc. No. 55–1), at p. 15.)) Finally, Plaintiff points out, the evidentiary value of Defendant's account

**3.** Plaintiff stated the following in her deposition:

Q: Who came up with that number [55 calls]?

A: Talking with the investigator that came out to see me, we were talking about how many actual phone calls were made to my phone and it was—we were going by it was more than ten, it was definitely more than 20, but not over 60. Again, I didn't—like I said, unfortunately, I didn't write everything down.

* * *

Q: Okay. Did you tally up the number of phone calls in any way?

A: No.

(S. Fini Dep. at pp. 53, 55.)

notes for JH's account (*see* Def.'s Mot. at Ex. K) depends on the "accuracy and detail" with which Defendant's employees kept track of account activity, and these employees' failure to timely remove Plaintiff's phone number from JH's account does not inspire confidence in their competence. (Pl.'s Resp. at p. 3.)

Regardless of the validity of Plaintiff's criticisms, at no point does she rebut the clear testimony of Shannon Picchione, Defendant's vice president of customer management operations. When asked "[d]oes your company keep track of calls that are *attempted* but *not delivered*," Picchione responded, "[y]es . . . [v]ia the auto dialer report." (Picchione Dep. at p. 15 (emphasis added).) Such calls are denoted on the report by the caption "Data error or no-value." (*Id.* at p. 21.) Defendant supplied the autodialer report for Plaintiff's phone number, and it noted whether each of fifteen calls was answered by a person or answering machine, or attempted but not answered. (Def.'s Mot. Summ. J. at Ex. H.) Of these calls (fourteen of which are relevant), four were answered by a person, ten were received by an answering machine, and one was not delivered (denoted by the term "Data Error–Dead Air/Low Voice Volume"). (*Id.*) Plaintiff's attempt to skirt this testimony, perhaps in an effort to use it against Defendant, troubles the Court.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. v. Groves,* 586 F.3d 1273, 1277 (11th Cir.2009) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, the movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. When it conflicts, the court presumes the nonmoving party's evidence to be true and will draw all reasonable inferences in its favor. *Shotz v. City of Plantation,* 344 F.3d 1161, 1164 (11th Cir.2003). Cross-motions for summary judgment "may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *United States v. Oakley,* 744 F.2d 1553, 1555–56 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.,* 512 F.2d 1017, 1023 (5th Cir.1975)).

## III. ANALYSIS

### A. Existence as a Matter of Law of Calls Not Admitted by Defendant

Defendant first moves for summary judgment on both the TCPA and FCCPA counts with respect to any calls that it did not admit. Defendant reviewed its efforts, which included a search of Defendant's autodialer software, to unearth any call made to Plaintiff's phone:

> to determine each and every instance that DISH made a call to [Plaintiff's phone], regardless of the purpose the call [sic], regardless of what medium was used to make the call (*e.g.,* live or automatic), and regardless of the disposition of the call (*i.e.,* regardless of whether the call was answered by a live

person, an answering machine, or was not answered at all)."

(Def.'s Mot. at p. 15; *see also id.* at Exs. G, H, J, K, L.) In comparison, Plaintiff testified that she arrived at her estimate of the number of calls by determining that "it was more than ten, it was definitely more than 20, but not over 60." (S. Fini Dep. at p. 52.) Plaintiff's deposition testimony, coupled with that of her husband, is the only evidence she has for her position on the number of calls besides the December 21, 2011 voicemail that Plaintiff's counsel transcribed and inserted in the Complaint (*see* Pl.'s Compl. at ¶ 19.) Apparently based on her and her husband's deposition testimony, Plaintiff suddenly asserted in her Response to Defendant's Motion for Summary Judgment that Defendant also called Plaintiff's husband. (Pl.'s Resp. at p. 8.) This sort of accusation, apparently offered to show the flaws in Defendant's call tracking system, lacks sufficient evidentiary support to affect the Court's decision at this stage.[4]

In *Anderson v. Liberty Lobby*, the Supreme Court explained that the standard for summary judgment is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255, 106 S.Ct. 2505. Defendant presents unchallenged computer records showing a pattern of calls that largely corresponds to its predetermined schedule for reminding customers to pay their account balances. Defendant's version of the call schedule also matches up with the customer, JH's, unpaid account invoices.

■ Nevertheless, the law governing summary judgment is quite indulgent of non-movants' testimony. Generally, "a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach,* 707 F.3d 1244, 1253 (11th Cir.2013) (citing *Scott v. Harris,* 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (holding, in the context of video evidence, that a court should not adopt a party's version of the facts when it is "blatantly contradicted by the record")). Defendant's evidence is competent, notwithstanding Plaintiff's mischaracterization of Defendant's employee's testimony regarding the autodialer software and call record-

4. It is worth noting that Plaintiff, her husband, and especially her counsel probably could have pursued other avenues of discovery to confirm the number of calls Plaintiff received. The following portion of Plaintiff's husband's testimony is illustrative:

**Q: ... [W]hen you get something from [Plaintiff's wireless provider] online, does it list anything about numbers that have been called or—or numbers from which you have received calls?**
A: I can look that up if I—if I wish to.
**Q: How do you go about doing that?**
A: You just go online, log in, and you can get a list of phone numbers that have

called—that have called my—my cell phone or [Plaintiff's] cell phone.
**Q: Okay. And did you try to do that for any of the calls that your wife is suing on in this lawsuit?**
A: I have. But—
**Q: And how did that go?**
A: It didn't go very well due to the fact that I have lack of Internet access [sic], and at the time, we did not have laptops and I tried calling Metro PCS about that and they said that I would have to go online.
(J. Fini Dep. (Doc. No. 42–3), at pp. 15–16.)

ing system. (*Compare* Pl.'s Resp. at pp. 2–3 *with* Picchione Dep. at pp. 15, 21.) However, Plaintiff testified that she "definitely" received more than 20 calls. (S. Fini Dep. at p. 52.) Plaintiff's husband's testimony is more or less consistent. (*See* J. Fini Dep. (Doc. No. 42–3), at pp. 20–23.) This testimony is evidence, even though Plaintiff admitted that she did not actually tally the number of calls in any way. At this stage, the Court cannot weigh evidence and determine credibility, so Defendant's Motion for Summary Judgment with respect to the alleged 41 calls that it did not admit to making is denied.

## B. Summary Judgment as to TCPA Claims

Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, in large part to curb "the proliferation of intrusive, nuisance calls to [consumers'] homes from telemarketers." Pub.L. No. 102–243, 105 Stat. 2394 at § 2(6) (1991). Although Defendant is not accused of telemarketing in this case, the statute was written broadly, and the portion relevant to Defendant provides the following:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. . . .

47 U.S.C. § 227(b)(1)(A)(iii). Pursuant to § 227(b)(3), a private person may bring an action based on a violation of the statute to enjoin such violation and/or for the greater of actual *monetary* losses or $500 per violation. Additionally, the court may treble the monetary or statutory damages if the violation was willful or knowing. *Id.*

The law clearly applies to Defendant because Defendant fits the description of "any person within the United States," and there is no dispute that it used an "automatic telephone dialing system or an artificial or prerecorded voice." *Id.* at § 227(b)(1). However, Defendant raises two legal arguments in an attempt to show that Plaintiff lacked standing to sue under the law—first, because she was not a "called party" within the meaning of the statute, and second, because she was not charged for the calls Defendant made to her phone. Defendant confines its standing arguments to the limitations inherent in the statute, so more general standing requirements such as redressability or particularized injury are not at issue and will not be discussed. Based on the findings of law contained herein, the Court denies Defendant's Motion with respect to Plaintiff's TCPA claims.

### 1. Plaintiff's Standing as "Called Party"

#### a. Intended Recipient

Defendant first argues that Plaintiff lacks standing as a "called party" under the statute because she was not the intended recipient of the calls. Although the term "intended recipient" does not appear anywhere in the statute, *see Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 640 (7th Cir.2012), neither party has identified any binding precedent that conclusively defines "called party." Defendant submits four cases that hold, in one form or another, that only the intended recipi-

ent of an autodialed or prerecorded call has standing to bring an action for a violation of the TCPA. Of these cases, three are based on a situation where a telemarketer or other commercial party calls or sends a fax to the correct number, but the wrong person (a parent, roommate, or spouse of the intended recipient) actually receives the communication. *See Meadows v. Franklin Collection Serv., Inc.*, 414 Fed. Appx. 230, 235 (11th Cir.2011) (per curiam) (parent); *Leyse v. Bank of Am., Nat'l Assoc.*, No. 09 Civ. 7654(JGK), 2010 WL 2382400, at \*4 (S.D.N.Y. June 14, 2010) (roommate); *Kopff v. World Research Grp., LLC*, 568 F.Supp.2d 39, 42 (D.D.C. 2008) (spouse). In all three cases, the courts reasoned on policy grounds that the defendant-callers made no mistakes as far as the number they dialed, and to hold them liable for unintentional and unavoidable communications would exponentially expand the number of potential plaintiffs and create an impossible hurdle for callers to overcome.

Defendant also cites a case in which two cell phone carriers sued a telemarketer on behalf of their subscribers. *Cellco P'ship v. Dealers Warranty, LLC*, No. 09–1814(FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010). Although that case adopted the same holding as *Leyse* and *Kopff*, its holding was based on an entirely different scenario in which the plaintiffs did not personally receive *any* calls whatsoever. *Id.* at \*9–10. As such, the Court finds that case to offer limited insight with respect to the case at bar.

This case presents different factual circumstances. Although Defendant had the unforeseeable misfortune of being provided the wrong number by its customer, this is not the same as calling the correct number and accidentally reaching another member of the household or office. Moreover, it is difficult to hold that reaching the wrong person was inadvertent or unavoidable once Defendant became aware that the number it was calling was not tied to an existing account.[5] Recently confronting a similar fact pattern, the court in *Swope v. Credit Management, LP* found that an individual was the "called party" where "the defendant intended to call the individual's number, and that individual was the regular user and carrier of the phone[,]" even though the caller had the wrong number. No. 4:12CV832 CDP, 2013 WL 607830, at \*3 (E.D.Mo. Feb. 19, 2013)[6]; *see also Page v. Regions Bank*, 917 F.Supp.2d 1214, 1217–18 (N.D.Ala.2012) (collecting cases); *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1320 (S.D.Fla.2012) (distinguishing *Meadows* ). Like the plaintiff in *Page*, Plaintiff "is much more than an incidental recipient of a correctly placed phone call," *Page*, 917 F.Supp.2d at 1219, which accurately de-

---

**5.** Even though the parties disagree as to when, exactly, Defendant's employees became aware that Plaintiff was not a customer, it is undisputed that calls continued for a substantial period of time thereafter. The FCC has conclusively determined that "the creditor should be responsible for demonstrating that the consumer provided prior express consent," so it was not Plaintiff's burden to disabuse Defendant of the notion that it was calling a consenting customer. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (F.C.C. Jan. 4, 2008).

**6.** The Court has read Defendant's Response to Plaintiff's Notice of Supplemental Authority (Doc. No. 73). Defendant's attempt to distinguish *Swope* is unavailing; it is clear that the facts in *Swope* are far more similar to the facts of this case than are any of Defendant's cited cases. The Court notes that it does not adopt *Swope's* conclusion that *any* person may bring suit; rather, the Court finds that a called party may bring suit, and that Plaintiff qualifies as a called party. Finally, although the Court is sympathetic to Defendant's policy arguments, they cannot overcome the plain language of the statute.

scribes the plaintiffs in the cases cited by Defendant.

■ Other provisions of the TCPA also provide support for Plaintiff's interpretation. Section 227(d)(3)(B), which sets out "[t]echnical and procedural standards" for prerecorded telephone calls, requires any telephone system making such calls to "release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up." Replacing "called party" in this sentence with "intended party" would render the statute nonsensical. Plaintiff's interpretation—that "called party" refers to the actual recipient of the call—is far superior. *See Breslow,* 857 F.Supp.2d at 1321. Therefore, the Court concludes that possessing standing as a "called party" under the TCPA does not require the plaintiff to have been the intended recipient of the call.

#### b. Telephone Number Subscriber

Alternatively, Defendant proposes that "called party" should be defined as the subscriber to the telephone service. Defendant offers the Black's Law definition of subscriber, confining the term to an individual "who enters into '[a]n oral or a written agreement to contribute a sum of money or property, gratuitously or with consideration, to a specific person or for a specific purpose.'" (Def.'s Mem. Opp. (Doc. No. 55), at p. 17.) However, none of the cases cited by Defendant in support of its argument construe the term "subscriber" so narrowly. *Gutierrez v. Barclays Group* is the only case to base its holding on the plaintiff's status as a subscriber, and that case failed to define the term at all in the scant two sentences it devoted to the issue. No. 10cv1012 DMS (BGS), 2011 WL 579238, at *5 (S.D.Cal. Feb. 9, 2011). Other cases cited by Defendant define "subscriber" more broadly and in a fashion

that would encompass Plaintiff: "this Court finds that Plaintiff was the called party because [the defendant] intended to call Plaintiff's cellular telephone number and Plaintiff is *the regular user and carrier of the phone.*" *D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC,* 791 F.Supp.2d 622, 625 (N.D.Ill.2011) (emphasis added); *see also Swope,* 2013 WL 607830 at *3 (adopting definition from *D.G. ex rel. Tang); Page,* 917 F.Supp.2d at 1219–20 (same); *Tang v. Medical Recovery Specialists, LLC,* No. 11 C 2109, 2011 WL 6019221, at *2 (N.D.Ill. July 7, 2011) (same). Given the plethora of contractual arrangements available to wireless customers, it is not surprising that so many courts would adopt the practical definition advocated by Plaintiff. Without expressing an opinion as to whether it is actually necessary to be a "subscriber" to have standing under the TCPA, this Court finds that Plaintiff has standing because she is the regular user and carrier of the phone at issue in this case.

#### 2. Charged for Calls

Finally, Defendant claims that Plaintiff must have been charged for the calls in order to have standing under the TCPA. Defendant identifies a split amongst various district courts as to whether this is a necessary component of standing. Once again, this Court does not express an opinion on that question because it is clear that Plaintiff was "charged" for the calls under the relevant Federal Communications Commission ("FCC") rules and regulations.

■ Defendant points to the FCC's initial rules and regulations for implementing the TCPA. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C.R. 8752, 8775 (F.C.C. Oct. 16, 1992). However,

these rules have been superseded by the FCC's 2003 Revisions to the 1992 Implementing Rules. In the key revision for present purposes, the FCC stated the following with respect to autodialed calls to wireless phones:

*The Commission has long recognized,* and the record in this proceeding supports the same conclusion, *that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.* Wireless subscribers who purchase a large "bucket" of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the "bucket" allowance. This "bucket" could be exceeded more quickly if consumers receive numerous unwanted telemarketing calls. Moreover, as several commenters point out, telemarketers have no way to determine how consumers are charged for their wireless service.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C.R. 14014, 14115 (F.C.C. July 3, 2003) (emphasis added). There is no dispute that Plaintiff and her husband paid *something* for her cell phone service. The Court finds the FCC's interpretation of when a customer is "charged" to be highly persuasive, and therefore finds as a matter of law that Plaintiff was "charged" for the calls. *See Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency" where Congress has implicitly delegated rulemaking and policy formulation to an executive agency).

### 3. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment under the TCPA as to all fourteen calls that Defendant admitted to making. Because the Court has determined that only the *actual* recipient of a call, who is also the regular user and carrier of the relevant mobile phone, has standing to sue under the TCPA, Plaintiff's Motion must be denied. Defendant has admitted to making fourteen relevant phone calls, but Plaintiff's husband claims that he answered "at least ten times." (J. Fini Dep. at p. 22.) Plaintiff's husband is not a party to this case, and in any event would not have standing to assert a claim for calls he received by answering Plaintiff's phone. The Court is unable to determine as a matter of law how many, if any, calls were made beyond the admitted fourteen. Since Plaintiff seeks summary judgment as to all of the calls that are cognizable at this stage in the litigation, she would have to prove, without contradiction, that she personally received them all. Plaintiff's husband's testimony renders this task impossible. Because Defendant has raised competent evidence disputing that there were more than fourteen calls, and Plaintiff has claimed that her husband answered at least ten calls, the Court cannot conclude as a matter of law that Plaintiff answered at least fourteen calls herself.

### C. Summary Judgment as to FCCPA Claims

Defendant makes three arguments in support of its Motion for summary judgment as to Plaintiff's FCCPA claims. First, Defendant argues that Plaintiff lacks standing under the Act because she is not a "debtor" within the meaning of the statute. Second, even if Plaintiff does have standing, Defendant argues that the nature and volume of the calls (which, from Defendant's perspective, amount to no more than fifteen over a period of approximately five months) was not so abu-

sive or frequent as to violate the statute as a matter of law. Finally, even if there is a disputed issue of material fact as to Defendant's liability under the FCCPA, Defendant seeks summary judgment as to Plaintiff's claim for actual damages due to psychological problems allegedly caused by the calls.

### 1. Standing as a Debtor

A "debtor" under Florida Statute § 559.55(2) is "any natural person obligated or allegedly obligated to pay any debt." Plaintiff is not actually obligated to pay any debt to Defendant; Plaintiff was never even a customer of Defendant. However, Plaintiff asserts that she was "allegedly obligated" to pay a debt under the statute because Defendant's prerecorded calls requested that she pay Defendant or else her satellite television service would be discontinued. (Pl.'s Resp. at p. 11.) As previously discussed, Plaintiff was only able to produce the text of the final voicemail she received. (*See* Pl.'s Compl. at ¶ 19.) Defendant argues that Plaintiff was not allegedly obligated to pay the debt because she knew she was not a Dish customer, a fact that Dish confirmed to her as early as June 2011 (according to Plaintiff) or August of the same year (according to Defendant). (Def.'s Mot. at p. 17.) As such, "Plaintiff never labored under the impression that DISH was seeking payment of money from her." (*Id.*)

■ Defendant essentially argues that Plaintiff could not have been "allegedly obligated" to pay the debt where neither Plaintiff nor Defendant actually thought Plaintiff was so obligated. However, the question is not whether Defendant thought Stefani Fini, the individual, was obligated to pay the debt; rather, it is whether Defendant communicated to the called party that she was obligated. At least one Florida court has held that the FCCPA applies to a similar case of mistaken identity, where the creditor calls the wrong number and the recipient has no knowledge of the actual debt. *See Desmond v. Accounts Receivable Management, Inc.*, 72 So.3d 179, 181 (Fla. 2d DCA 2011). Defendant cites just one case that concludes, without substantial analysis, that two non-debtors who were associated with actual debtors lacked standing to pursue FCCPA claims. *Belin v. Litton Loan Serv., LP*, No. 8:06–CV–760–T–24 EAJ, 2006 WL 1992410, at *7 (M.D.Fla. July 14, 2006). The Court finds the Second DCA's opinion on the definitions included in the FCCPA to be more persuasive, and concludes that Plaintiff was "allegedly obligated" to pay a debt, and thereby has standing under the FCCPA.

### 2. Frequency and Abusiveness of Calls

The Court is unable to determine the number of relevant calls actually made as a matter of law. It is at least 14, perhaps as many as 55, but in any case it is inappropriate at this stage in the litigation to decide whether the actual number of calls amounts to a violation of the FCCPA.

■ First, the Court cannot determine whether Defendant violated § 559.72(7) [7] because of the frequency of the calls. Under the FCCPA,

> The purpose as well as frequency of calls are relevant in determining wheth-

---

7. Florida Statute § 559.72(7) forbids any "person" from:

Willfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

er a creditor or collection agency has harassed a debtor, within the means of consumer collection practices legislation; proof of numerous calls alone does not create a jury issue where the creditor calls only to inform or remind the debtor of the debt, to determine reasons for nonpayment, to negotiate difference or to persuade the debtor to pay without litigation.

*Borneisen v. Capital One Fin. Corp.,* No. 8:09–CV–02539–T–17TGW, 2011 WL 2730972, at *13 (M.D.Fla. July 13, 2011). Here, the purpose of the calls was to remind JH to pay his bill, but a jury could find that the frequency (at most a few times per week, and no more than 55 calls in total over four to seven months) could reasonably be expected to harass Plaintiff. *Compare Desmond,* 72 So.3d at 181 (holding that 18 calls over three months "was not harassing and that ... frequency did not rise to the magnitude necessary to violate this statute in the absence of additional factors") *with Story v. J.M. Fields, Inc.,* 343 So.2d 675, 676–78 (Fla. 1st DCA 1977) (holding that at least 100 calls over five months could give rise to liability under the FCCPA). Although the *Desmond* court declined to grant summary judgment against the plaintiff's complaint on the issue of "other factors" giving rise to liability, the facts were somewhat different. In *Desmond,* the plaintiff was not provided with any means to contact a live person to get an explanation for the calls, and was unable to stop the calls by dialing into the defendant's automated system. *Desmond,* 72 So.3d at 180. Here, Plaintiff and her husband were able to speak with a live person and received an explanation for the calls. However, Defendant's representative took at least three months to correct

the mistake, per Defendant's own admission, so there is a trial issue as to whether Defendant's conduct was willful.

Defendant may also be liable under section 559.72(9)[8] because Defendant may have "know[n]" that the debt was illegitimate as to Plaintiff to the extent required to overcome the safe harbor built into the Act. Although Plaintiff notified Defendant of the mistaken phone number, the portion of the FCCPA that sets out civil remedies also provides that "[a] person may not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error." Fla. Stat. § 559.77(3). Neither party disputes that any violation of section 559.72(9) was, at least initially, the result of a mistake; it is not Defendant's fault that JH provided an incorrect telephone number. Additionally, Plaintiff apparently encountered little trouble in reaching Defendant's representatives and obtaining an explanation for the calls. However, a jury could conclude that Defendant failed to maintain "procedures reasonably adapted to avoid such error," Fla. Stat. § 559.77(3), because four months elapsed before the calls finally ceased.

### 3. Damages

■ Pursuant to Florida Statute 559.77(2), Defendant may be liable for "actual damages" under the FCCPA, which, as Defendant admits, (Def.'s Mot. at p. 25), includes emotional distress. *See Barker v. Tomlinson,* No. 8:05–CV–1390–T–27EAJ,

**8.** Making it unlawful for any person to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

2006 WL 1679645, at *3 (M.D.Fla. June 7, 2006) (awarding "actual damages of $10,000" under the FCCPA "for the fear, anxiety, embarrassment, and emotional distress caused by" the defendant). The evidentiary support for actual damages, like the rest of Plaintiff's evidence, is comprised primarily of the deposition testimony of Plaintiff and her husband. However, Plaintiff testified that the calls made her anxious and forced her to withdraw from her family. The testimony of Plaintiff's physician, Dr. Pattanayak, is inconclusive and does not rule out the calls as a cause for Plaintiff's apparent maladies. This issue will also be reserved for trial.

## IV. CONCLUSION

It is not lost on the Court that in enacting the TCPA, Congress, according to findings contained in the statute's legislative history and administrative regulations, seemed focused on mitigating intentional, unsolicited telemarketing, not the misdirected account service messages at issue in this case. It is also apparent that Defendant would be shielded from TCPA liability by the FCC's exemption for commercial calls that do not constitute telephone solicitation, if only its customer had misrepresented that his phone number was a residential line instead of a cellular line.[9] Cases such as this one are probably an endangered species, once Congress recognizes the growing equivalence with which consumers and businesses treat mobile and residential phone lines.[10] Nevertheless, this Court is bound by the law that it finds, not the law that it seeks. Both

parties' Motions for Summary Judgment are denied in all respects.

Based on the foregoing, it is ordered as follows:

1. Plaintiff Stephanie Fini's Motion for Partial Summary Judgment (Doc. No. 41), filed December 13, 2012, is **DENIED.**

2. Defendant Dish Network L.L.C.'s Motion for Summary Judgment (Doc. No. 46), filed December 17, 2012, is **DENIED.**

3. Defendant's Motion for Hearing (Doc. No. 56), filed January 7, 2013, regarding the Summary Judgment motions is **DENIED.** The issues are clearly articulated in the parties' filings before the Court.

4. Plaintiff's Motion for leave to file a Reply (Doc. No. 74) regarding her Notice of Supplemental Authority is **DENIED.** The case submitted as supplemental authority speaks for itself.

---

**9.** *See* Delivery Restrictions, 47 C.F.R. § 64.1200(a)(2)(iii) ("No person may ... [i]nitiate any telephone call to any *residential* line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call ... [i]s made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation ....") (emphasis added).

**10.** Look no further than Plaintiff's admission that she does not even maintain a land line at her residence. (S. Fini Dep. at p. 16.)